## MAHAN *v.* UNITED STATES.

1. Under article 4 of chapter xliv of the Revised Code of Mississippi, which enacts,

   "That no contract for the sale of any personal property, &c., shall be allowed to be good and valid except the buyer shall receive part of the personal property or shall actually pay or secure the purchase-money, or part thereof, or unless some note or memorandum in writing of the bargain be made and signed by the party to be charged by such contract or his agent thereunto lawfully authorized,"

   a parol agreement for the sale of cotton in payment of a mortgage debt, cannot be sustained, where, though the price of the cotton per pound was fixed, the number of pounds was not definitely ascertained, nor any payment was indorsed on the mortgage, nor any receipt given, nor any memorandum in writing made, nor any present consideration paid, nor any change of possession effected, nor any delivery, either actual or symbolic, made.

2. Such a transaction would, from want of delivery, not be good as a gift *inter vivos.*

APPEAL from the Court of Claims; the case as found by that court, from the evidence, being thus:

One Mitchell, of Mississippi, being indebted to his step-daughter, of whose estate he had been the guardian, mortgaged, with his wife (the mother of the step-daughter mentioned), a life estate which the wife had in a valuable cotton farm in Mississippi, near the river of that name; and soon afterwards died. Mrs. Mitchell, his widow, became administratrix of his estate. In 1861 the rebellion broke out. There were at this time one hundred and sixteen bales of cotton on the farm; and the war being flagrant in Mississippi, the Confederate general ordered all cotton near the river, under penalty of being burnt, to be removed from it, in order to prevent its capture by the forces of the United States.

In compliance with this order, Mrs. Mitchell removed the cotton to Kingston, near Natchez, where it was stacked and covered. "After the cotton had been thus removed to Kingston, but before the capture of Natchez by the United States forces, and before the passage of the Abandoned and Captured Property Act, *a parol* agreement was made be-

tween Mrs. Mitchell and her daughter, now like herself a widow, to the effect that the latter should take the cotton as a payment upon the mortgage before described. The price was fixed at twenty cents per pound, but the number of pounds was not definitely ascertained, neither was any payment indorsed upon the mortgage, nor any receipt given, nor any memorandum in writing made, nor any present consideration paid. Neither did any change of possession take place, nor was there any delivery, actual or symbolic. The cotton remained at Kingston until its seizure by the military forces of the United States, immediately upon which the daughter asserted that she was the owner, and sought to procure its release."

Not succeeding in this, and the cotton being sold, and the Captured and Abandoned Property Act being passed, which allowed loyal owners of property captured in the South and so disposed of, to apply to the Court of Claims for the proceeds, the daughter (now re-married to one Mahan) filed with her husband a petition in the court just named, to have the money which, on sale of it, the cotton had brought. The Court of Claims said:

"The party relies upon a purchase and sale at which, so far as the evidence shows, she paid no money, relinquished no rights, released no debt, assumed no responsibility, and acquired no possession. The intent of the parties was not evidenced by the payment of the purchase-money, nor by the ascertainment of the price, nor by a receipt upon the mortgage, nor by a written memorandum between the parties, nor by any formal or decisive declaration before witnesses, nor by the delivery of the thing sold. The facts do not, in law, establish a sale and delivery, and the evidence to prove the ownership of the captured property fails."

The court accordingly dismissed the petition, and from that dismissal this appeal came.

*Mr. R. M. Corwine, for the appellant:*

I confess myself embarrassed at the very outset in the discussion of the ownership of the cotton when captured.

The testimony is clear and direct, even as stated by the court below in its findings, and free from any doubt. And yet that court find that what was done did not amount to such a sale as would pass the title. [The counsel then went into an examination of the findings.]

But on the case as found it cannot be doubted that, as between the mother and daughter, there was a good contract of sale. The price was fixed, the number of bales (116) ascertained, and the precise location of the cotton understood between the parties. It was that particular lot of cotton which was stored at Kingston, and distinctly marked and piled up there. This was enough to authorize the daughter to take possession and control the cotton as against the mother; and, if possession had been refused, she could have filed her bill to compel a specific performance. But the parties went a step further. It was agreed that the cotton should be taken as part *payment* on the mortgage. Thus a price was fixed, and the mode of payment satisfactory to the parties provided. Undoubtedly the minds of the parties met; the mother could have compelled the daughter to take the cotton and give the credit as stipulated.

Neither at common law nor by the statute of frauds of England or Mississippi, was it necessary that the evidence of sale should be in writing. Story,* in commenting on the English statute, states the rule with respect to agreements for the sale of personal property to be, that where it is to be performed within one year it need not be in writing. The statute of Mississippi (Howard and Hutchinson's Compilation of Mississippi Laws, p. 370, § 1) re-enacts the English statute, and, in so far as the sale of personal property is concerned, where the agreement is to be performed within one year, the language is the same and so is the law.

But if this transaction is held not to be such a sale as passed the title absolutely to Mrs. Mahan, it must be held to be a gift *inter vivos.* The learned Dr. Bouvier in his Law Dictionary† states the rule to be, that such a gift, when

---

* On Sales, ₴ 258.    † Volume 1, page 561.

completed by delivery, passes the title to the thing, so that it cannot be recovered back by the giver; and such is no doubt the rule.

*Mr. G. H. Williams, Attorney-General, and Mr. C. H. Hill, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The sole question in the case is, whether the appellant was the owner of the cotton at the time of its seizure by the agents of the United States, and this must be decided as a matter of law on the finding of facts made by the Court of Claims, notwithstanding the frequent reference by the counsel of the appellant to the view which he takes of the evidence given in that court.

It is strongly urged by the counsel that, by the common law, the facts as found by the court, constituted a valid sale of the property, and that, as there was no statute of frauds in force in the State of Mississippi requiring delivery or a written memorandum to make a sale of personal property valid, the parol agreement set out in this finding constituted a valid sale. Whether this would be so in the absence of such a statute as most of the States have on that subject, might admit of serious debate.

But, while there is no such provision in the authorized publication of the statutes of Mississippi of 1840 by Howard and Hutchinson, to which we have been referred, we find in the Revised Code of Mississippi of 1857, which, from our own researches, we are bound to believe was the law in force when this agreement was made, a very stringent provision on this subject in the statute of frauds and perjuries of that code.

Article four of chapter forty-four* enacts that no contract for the sale of any slaves, personal property, goods, wares, and merchandise for the price of fifty dollars or upwards shall be allowed to be good and valid, except the buyer shall receive the slaves, or part of the personal property,

---

* Page 359.

goods, wares, and merchandise, or shall actually pay or secure the purchase-money, or part thereof, or unless some note or memorandum in writing of the bargain be made and signed by the party to be charged by such contract or his agent thereunto lawfully authorized.

The finding of the Court of Claims negatives in the most express terms the existence in the agreement, by which the title of the cotton was supposed to be transferred, of each and every one of the acts or conditions, some one of which is by that statute made necessary to the validity of the contract.

To hold that an agreement which that statute declares shall not be allowed to be good and valid was sufficient to transfer the title of the property to the claimant, would be to overrule the uniform construction of this or a similar clause in all statutes of frauds by all the courts which have construed them.

The Court of Claims held that the agreement passed no title, and we concur in their conclusion on that subject.

It is unnecessary to examine into the effect of the transaction as a gift *inter vivos*. The finding that there was no delivery would be as fatal to such a gift as to the agreement of sale. Besides there is nothing in the petition of the plaintiff, or in the findings of the Court of Claims, on which such a gift could be considered as in the issue. The finding that it was a parol contract of sale is directly opposed to the idea of a gift.

DECREE AFFIRMED.