### DAVIS et al. v. CARNEGIE STEEL CO.

(Circuit Court of Appeals, Sixth Circuit. October 2, 1917.)

No. 2983.

1. APPEAL AND ERROR ⬤⟿927(7)—REVIEW—DIRECTED VERDICT—PRESUMPTIONS.

On appeal from a judgment on a directed verdict for defendant, it must be assumed that plaintiffs' testimony is true, and plaintiffs are entitled to the benefit of every fair inference therefrom.

2. DAMAGES ⬤⟿190—SUFFICIENCY OF EVIDENCE—LOSS OF PROFITS.

In an action for breach of an agreement by defendant that plaintiffs could have two large dumps of furnace slag for keeping the slag out of defendant's way, evidence as to the value of crushed slag was not a sufficient basis for a recovery for loss of profits, in the absence of evidence as to the cost of crushing and marketing the slag; it appearing that a considerable portion required such treatment to make it marketable.

3. DAMAGES ⬤⟿176—EVIDENCE ⬤⟿317(6)—ADMISSIBILITY OF EVIDENCE—LOSS OF PROFITS—HEARSAY.

Testimony, based on inquiries at Detroit, that there was a given profit per ton at that place in handling and marketing slag, was properly excluded, where there was no showing that the profits derivable from treating and marketing the dumps in question bore sufficient relation to the profits derivable from the uses to which the slag was put in Detroit; and, moreover, such testimony was secondhand information.

4. DAMAGES ⬤⟿190—SUFFICIENCY OF EVIDENCE—LOSS OF PROFITS.

Evidence that the value of the slag in the two dumps was in excess of $2,500 was not sufficient to support a verdict for $2,500 damages, in the absence of any evidence as to what it would have cost plaintiffs to perform their duty of keeping the slag out of defendant's way, not only during the time when there was a demand for slag, but during the entire year.

5. DAMAGES ⬤⟿190—SUFFICIENCY OF EVIDENCE—LOSS OF PROFITS.

Evidence as to the price quoted by defendant on rough slag, uncrushed and unscreened, delivered f. o. b. cars to certain railroads, would not support a recovery for loss of profits, in the absence of evidence as to the cost of delivery to such railroads, or evidence that there was a market at that price for the full amount of slag.

6. APPEAL AND ERROR ⬤⟿719(8)—ASSIGNMENT OF ERRORS—NECESSITY.

A judgment will not be reversed for failure to allow nominal damages, in the absence of a specific assignment or complaint on that ground.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. FRAUDS, STATUTE OF ⬷63(1), 72(1), 82—NATURE OF PROPERTY—"GOODS."

Where defendant orally agreed to turn over a slag-crushing plant to plaintiffs, to be operated by them, and to give them two large dumps of slag, covering several acres of ground, if they would remove the slag and keep the slag dumped by defendant out of defendant's way, the agreement was either a grant of, or contract for, an interest in lands, tenements, or hereditaments, within the statute of frauds (Gen. Code Ohio, §§ 8620, 8621), or a contract for the sale of goods, within section 8384, in view of section 8456, defining "goods" as embracing all chattels and personalty other than things in action or money.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Goods.]

8. FRAUDS, STATUTE OF ⬷83—NATURE OF CONTRACT—SALE OR MANUFACTURE.

The contract was not one of manufacture by plaintiffs for defendant, but one for the passing of title in payment for services, as defendant was not concerned with the crushing of the slag, except as a means for getting it out of the way, and the fact that payment was to be made in services, rather than in money, did not take the case out of the statute.

9. FRAUDS, STATUTE OF ⬷90(1)—SALES OF GOODS—ACCEPTANCE AND RECEIPT.

Under Gen. Code Ohio, § 8384, subsec. 1, providing that a contract to sell, or a sale of goods or choses in action of the value of $2,500 or upwards, shall not be enforceable, unless the buyer shall accept part of the goods and actually receive them, or give something in earnest, etc., and subsection 3, providing that there is an acceptance when the buyer, before or after delivery, expresses his assent to become the owner of the specific goods, an acceptance of the goods without actual receipt is insufficient.

10. FRAUDS, STATUTE OF ⬷130(1)—EFFECT OF STATUTE—CONTRACTS IN PART WITHIN STATUTE.

Where defendant agreed to turn over a slag-crushing plant to plaintiffs, and to give them two large dumps of slag, for removing the slag and keeping that dumped by defendant out of its way, but the agreement was not in writing, and plaintiffs had rendered no services under it, no recovery could be had for its breach; an essential part of the entire contract being void.

In Error to the District Court of the United States for the Northern District of Ohio; John H. Clarke, Judge.

Action by Frank B. Davis and another against the Carnegie Steel Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

Theodore A. Johnson, of Youngstown, Ohio, and Warren Thomas, of Warren, Ohio, for plaintiffs in error.

C. A. Manchester and Hine, Kennedy & Manchester, all of Youngstown, Ohio, and Squire, Sanders & Dempsey, of Cleveland, Ohio (Leroy A. Manchester, of Youngstown, Ohio, and Wm. C. Boyle, of Cleveland, Ohio, of counsel), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error (defendant below) had at its McDonald site, near Girard, Ohio, a large dump of furnace slag, amounting to many thousand tons and covering several acres; it had in connection with its Ohio steel plant, near Youngstown (a few

⬷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

miles from the McDonald site), another slag dump, much larger than the one at the latter site. Its daily dump of slag from the Ohio plant alone was from 1,000 to 1,500 tons. Plaintiffs brought suit to recover damages for the breach of an alleged oral contract, whereby defendant, in consideration of plaintiffs' agreement to remove from defendant's premises the two piles of slag, and to keep out of defendant's way the furnace slag dumped by defendant at both sites, agreed to put in a slag-crushing plant and turn the same over to plaintiffs, to be operated by them; they to have the slag to dispose of as they pleased.

Plaintiffs' testimony showed that prior to the making of the alleged contract there had been conferences between plaintiffs and defendant's engineers looking to the installation by plaintiffs on defendant's premises of a slag-crushing plant, estimated by plaintiffs to cost about $75,-000, for the crushing and removal of the slag dumps. There is no claim that any contract was entered into until plaintiffs' subsequent interview with defendant's president in November, 1912, at the close of which interview defendant's president is alleged to have said: "It would never do to have you put a slag-crushing plant on our ground; * * * you need screens and crushers; there is a steam shovel up there; we will put the plant in there, and you can have the slag so long as you keep it out of our way." To which plaintiffs replied: "We will keep the slag out of your way. * * * We are satisfied to go ahead and keep the slag out of your way." Thereupon defendant's president said: "This is out of the wind." This comprises the express proof of the contract relied upon. The alleged contract is interpreted by both plaintiffs as requiring the slag (including daily product) to be kept out of defendant's way; by one as requiring the removal of accumulations at both sites, if defendant so desired; by the the other as permitting it (at plaintiffs' option), but not requiring it.

The alleged arrangement was entirely oral; it was never subsequently reduced to writing; no payment was ever made to bind the alleged bargain; nothing was ever done under it; no part of the slag was ever delivered to or received by plaintiffs. On the contrary, the defendant built a crushing plant and operated it on its own account; plaintiffs never had any possession of, or anything to do with, defendant's plant, or with its appurtenances, equipment, or operation.

The defendant, by its answer, denied the alleged contract in toto, urging also the invalidity of the alleged contract not only for lack of mutuality, but also because it related to an interest in lands, and because not to be performed within a year from its making, and so void under the statute of frauds (G. C. Ohio, §§ 8620 and 8621); also, because, considered as a sale, or a contract of sale, of goods of the value of $2,500 and upwards, void under the Ohio Sales Act (G. C. § 8384). Defendant also denies here the authority of its president to make the alleged contract. At the close of the testimony the presiding judge (the present Mr. Justice Clarke) directed verdict for defendant. This writ is to review the judgment entered thereon.

[1] We must assume, on this review, that plaintiffs' testimony is true, and that they are thus entitled to the benefit of every fair inference therefrom. Shadoan v. C., N. O. & T. P. Ry. Co. (C. C. A. 6) 220 Fed.

68, 71, 135 C. C. A. 636. We accept their interpretation that the plant was to be operated by them.

[2, 3] The specific ground on which verdict was directed seems to have been lack of proof that plaintiffs were damaged by the breach of the alleged contract. We think the direction sustainable on this ground. There is no claim of damages (except as involved in loss of profits), or of money expended on faith of the contract. The sole basis of plaintiffs' claimed right of recovery is loss of profits, by being denied the right to perform. While plaintiffs showed the value of the crushed slag, there was no evidence of the cost of crushing and marketing it, and it seems to be assumed that a considerable portion at least required such treatment to make it marketable. The proof of profits lost was speculative and conjectural. Plaintiffs' testimony, based on inquiries at Detroit, that there was a given profit per ton at that place in the handling and marketing of slag, was properly excluded; for not only was it secondhand information, but there was no showing that the profits derivable from treating and marketing the dumps in question bore sufficient relation to the profits said to be derivable from the uses to which the slag was put in Detroit. Unless, therefore, there was other evidence taking it out of the general rule, the failure to show cost of operation was fatal to recovery. Anvil Mining Co. v. Humble, 153 U. S. 540, 549, 14 Sup. Ct. 876, 38 L. Ed. 814; McCornick v. Mining Co. (C. C. A. 8) 185 Fed. 748, 751, 108 C. C. A. 86; Magnolia Co. v. Gale, 189 Mass. 124, 132–133, 75 N. E. 219; Bristol R. Co. v. Bullock, 101 Va. 652, 44 S. E. 892; Klingman v. Racine Co., 149 Iowa, 634, 128 N. W. 1109; Bartow v. Erie R. R. Co., 73 N. J. Law, 12, 62 Atl. 489.

[4] One of the plaintiffs, however, upon cross-examination apparently designed to bring the case within the Ohio Uniform Sales Act, testified that "the value of that slag that we were to take away and in those piles would exceed the sum of $2,500"; and plaintiffs urge that this testimony is enough to support a verdict for at least $2,500 damages. We are unable to accept this view. It by no means follows that, because the slag was worth $2,500, plaintiffs were damaged in that amount by not getting it; for the contract was an entirety, and plaintiffs could not take away the slag, except by complying with the obligations imposed upon them, namely, the keeping of the slag out of defendant's way, not only during the demand for uncrushed slag, but during the entire year. In other words, plaintiffs had a duty to perform by way of payment for the slag; and the cost of performing that duty and making such payment does not appear.

[5, 6] Nor is the situation changed by the fact that defendant, during its subsequent operation, quoted "rough bank slag, uncrushed and unscreened," at the price of 30 cents per net ton delivered f. o. b. cars to either of three specified railroads; for the cost of such delivery does not appear, nor that there was a market at that price for untreated slag in the full amount which plaintiffs were required to take away. The failure to show the cost of plaintiffs' proposed operation, and the alleged loss of profits, is emphasized, and the correctness of the direction of verdict made especially apparent, by the indefinite and uncertain terms of the alleged contract, which render its validity extremely

doubtful, to say the least. It does not appear that the parties reached agreement on all essential features involved. For example: No provision was made for transporting the slag from the dumps to the proposed crusher and thence to the cars; defendant (for the purpose of its own operation) later put in a railroad track for the purpose first mentioned; and the petition alleges that defendant was to furnish plaintiffs, not only with the crushing plant and steam shovel, but also "locomotive and use of defendant's railroad." But, if such latter provision were to be assumed, it still remains that the method and terms on which defendant should furnish power, railroad and shipping facilities, and the extent of plaintiffs' specific rights in and control over defendant's land and equipment, do not appear to have been considered. Even were we to assume that plaintiffs were entitled to recover nominal damages, the judgment should not be reversed for failure to allow such recovery, in the absence of specific assignment or complaint on that ground. Lawrence v. Porter (C. C. A. 6) 63 Fed. 62, 68, 11 C. C. A. 27, 26 L. R. A. 167.

[7-10] But, assuming that there was rational basis for ascertaining plaintiffs' alleged loss of profits, we think the direction of verdict was nevertheless proper. The slag dumps were either part of the real estate, or they were personalty. If part of the real estate, the agreement, not being in writing, was void under the statute of frauds (sections 8620 and 8621, O. G. C.), as a grant of or a contract for an interest in lands, tenements or hereditaments. If personalty, the contract was void under the Ohio Sales Act (section 8384, G. C.); for (as declared by section 8456) the term "goods" embraces "all chattels and personalty other than things in action or money" (Laundry Co. v. Whitmore, 92 Ohio St. 44, 52, 110 N. E. 518, Ann. Cas. 1917C, 988); the alleged contract was not one of manufacture by plaintiffs for defendant; the latter was not concerned with the crushing of the slag, except as means for getting it out of its way. Its agreement was essentially for the passing of title in payment for services, and the fact that payment was to be made in services, rather than in money, does not take the case out of the statute. Franklin v. Matoa Gold Mining Co. (C. C. A. 8) 158 Fed. 941, 943, 86 C. C. A. 145, 16 L. R. A. (N. S.) 381, 14 Ann. Cas. 302. The "dumps" were of the conceded value of $2,500. There was no note or memorandum in writing, and no earnest money or part payment; and, assuming that the identification of the goods amounted to their acceptance, under subsection 3 of section 8384 (Williston on Sales, § 76, p. 86), plaintiff did not "actually receive" them, and, under subsection 1, acceptance without actual receipt was futile. An essential part of the entire contract being void, and plaintiffs having rendered no services under it, no recovery can be had for its breach. Snow Storm Mining Co. v. Johnson (C. C. A. 9) 186 Fed. 745, 754, 108 C. C. A. 615; Smith on Fraud, § 355.

These conclusions make it unnecessary to consider the other defenses urged, or the remaining assignments of error presented.

The judgment of the District Court is affirmed.