**OBEAR–NESTER GLASS CO. v. LAX & SHAW, Limited.**

(Circuit Court of Appeals, Eighth Circuit. January 11, 1926. Rehearing Denied February 26, 1926.)

No. 6918.

1. **Patents ☞195—Option agreement to purchase foreign patent rights on machinery held without consideration, where plaintiff was not required to order any machines.**

Agreement, giving plaintiff option to purchase foreign patent rights on certain machines, free of cost, which option was to expire on certain date, unless plaintiff ordered two machines, *held* without consideration, since plaintiff was not bound to order such machines.

2. **Principal and agent ☞155(2)—Bank's acceptance of receipt for money, delivered to defendant pursuant to plaintiff's directions, providing for different terms than authorized in original agreement, held not to bind plaintiff, where bank was without authority to do so.**

Acceptance of receipt by bank for money, delivered defendant pursuant to plaintiff's directions for sale of machinery to which plaintiff was to have foreign patent rights, providing for different terms than authorized in original agreement, *held* not to bind plaintiff, where bank was without authority to do so.

3. **Frauds, statute of ☞82.**

Contract for sale of patent right, or for sale of rights to obtain patent, is not within statute.

4. **Frauds, statute of ☞130—Part of divisible contract not within statute may be enforced.**

Where part of indivisible contract is within statute, whole contract is nonenforceable; but, if contract is divisible, then that part which is not within statute may be enforced.

5. **Contracts ☞171(1).**

Contract is entire when it shows that parties intended that each and all its parts and consideration are common each to the other and interdependent.

6. **Patents ☞195—Contract for sale of foreign patent rights to machines which plaintiff desired to install in its own plant, and in which defendant agreed to assist therein, held not divisible.**

Contract for sale of foreign patent rights to machines which plaintiff desired to install and use in its own plant, and in which defendant agreed to send its engineer to plaintiff's plant to place them in operation, *held* not divisible.

7. **Frauds, statute of ☞82—Oral contract for sale of foreign patent rights and installation of machinery held within statute, and unenforceable, unless purchaser gave something in part payment.**

Oral contract for sale of foreign patent rights and installation of machinery, in which no part of goods were accepted and received by purchaser, *held* within statute, and nonenforceable, unless purchaser gave something in earnest or part payment.

8. **Frauds, statute of ☞129(5).**

Payment, to take contract out of statute, may be made and received after contract is made.

9. **Money received ☞6(1)—Defendant impliedly agreed to repay plaintiff amount advanced before contract was entered into, if contract was not consummated.**

Where plaintiff paid defendant an amount before any contract had been entered into between parties, defendant impliedly agreed to repay plaintiff that sum if contract was not consummated.

10. **Frauds, statute of ☞129(5)—Actual discharge of defendant's liability to plaintiff on implied contract held sufficient to take contract for sale to plaintiff of patent rights and installation of machinery out of statute of frauds.**

To constitute part payment sufficient to take indivisible contract for sale to plaintiff of foreign patent rights and installation of machinery out of statute of frauds, defendant's liability to plaintiff on implied contract to repay to plaintiff sum advanced before any contract had been entered into between parties must have been actually discharged.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Action by Lax & Shaw, Limited, against the Obear-Nester Glass Company, with counterclaim by defendant. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

David H. Robertson, of St. Louis, Mo. (Carr & Carr and Rassieur & Goodwin, all of St. Louis, Mo., on the brief), for plaintiff in error.

Irvin V. Barth, of St. Louis, Mo. (W. Keane Small, of St. Louis, Mo., on the brief), for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. Lax & Shaw, Limited, a corporation (hereinafter called plaintiff), brought this action against Obear-Nester Glass Company, a corporation (hereinafter called defendant), for breach of an alleged contract for the sale of the patent rights to a glass bottle manufacturing machine, known as the "No-Boy Machine," and two of the machines.

Plaintiff's petition contained two causes of action. The first alleged the contract, the payment of $10,000 on the contract by the plaintiff to the defendant, and the breach of the contract by defendant. It sought a judgment for $10,000 on account of the payment,

for the sum of $2,813.12 alleged to have been lost on exchange on account of such payment, and for the sum of $41,000 alleged special damages. The second cause of action was substantially the same as the first, except that the prayer asked only for the $10,-000 paid and the sum of $2,813.12 alleged to have been lost on exchange.

The alleged contract on which plaintiff's cause of action was predicated read as follows:

"June 6, 1921.

"This agreement, made this day, June 6, 1921, between Joseph Nester, on behalf of Obear Nester Glass Company, St. Louis, Mo., and John S. Shaw, on behalf of Lax & Shaw, Limited, glass bottle manufacturers, Hunslit, Leeds, England:

"The above Joseph Nester hereby agrees to give the said John S. Shaw an option to purchase the patents rights for England, France, Germany, and Australia free of cost, and also the right for John S. Shaw to patent at his own cost the above in any European country. The price to be $30,000 (thirty thousand dollars), to be paid not later than December 1, 1921. This option to expire on August 6, 1921, unless the said John S. Shaw order machines (two) and molds before that date; then the option shall extend to December 1, 1921. We are to send $10,-000 when ordering two machines and molds. This money to be paid to the State National Bank of St. Louis, Mo., U. S. The Nester No-Boy Machine.

"[Signed]    John S. Shaw.
"Joseph Nester.

"Witness to signatures of Joseph Nester and John S. Shaw:

"John F. Shaw, Leeds, England.

"June 6, 1921.

"The option is also hereby given to John S. Shaw for the Two Boy Machine for $10,-000, ten thousand dollars, on the same terms and conditions as the No-Boy Machine.

"John S. Shaw.
"Joseph Nester.

"Witness to signatures of Joseph Nester and John S. Shaw:

"John F. Shaw, Leeds, England.

"The cost of Obear Nester two boy machine to be about $1,500."

The correspondence between the parties leading up to the execution of the above instrument, and the testimony of Thomas Lax, plaintiff's manager, show clearly that the two machines were to be used as trial machines, for the purpose of testing them in England and determining if they could be used successfully there.

11 F.(2d)—16

On July 30, 1921, the plaintiff, through the London Joint City & Midland Bank, Limited, cabled to the First National Bank of St. Louis, Mo., a credit of $10,000, irrevocable until September 30, 1921, with authority to pay to the defendant the sum of $10,000 upon delivery of bills of lading for two No-Boy Machines and molds and marine war insurance policies covering the shipment, to the National Bank. This cable was confirmed by a letter dated August 2, 1921. On August 1, 1921, the National Bank notified the defendant of the fact and terms of such credit. On August 2, 1921, the defendant cabled the plaintiff as follows:

"Cannot finish machine before Nov. 15th. Ten thousand will have to be paid in advance thirty thousand before shipment will guarantee bank to carry out contract."

On the same day defendant wrote a letter to the plaintiff, in which it confirmed the above cable, and also stated, among other things, the following:

"It will be necessary for you to release this $10,000 to us at once, and we will then order the molds just as soon as the sample bottles arrive. Up to this time they have not arrived. It takes a little time to get these things out, and it will be necessary for you to send us $30,000 by the time these molds and machines are finished. This will clean up the matter, and by that time we will have all of the papers for the patents ready, and those that are not ready we will forward to you just as soon as we get them.

"We will guarantee the First National Bank of St. Louis that we will carry out our agreement on this contract. We do not quite understand why you would send the money here to us and only give credit up to September 30th, of which the bank has notified me. This cannot be carried out by September 30th, as it takes time to get the molds made, and it may be necessary for us to take up some matters with you on these molds, and past experience has shown that we are always later than we figure on.

"In regard to Mr. Young: This matter will have to be straightened up, and he is prepared to go to England, when you are ready, provided the agreement is carried out as outlined to you.

"After you receive this letter, we would ask you to kindly wire us whether you will accept this, as we have another party who wants to figure on these machines."

On August 4, 1921, and before it received defendant's letter of August 2d, plaintiff cabled the defendant as follows:

"Ten thousand cabled to First National

Bank July thirtieth thirty thousand will be ready December first as agreement. You promised two machines in two months. Keep to agreement. Machines urgently wanted. Cable reply."

To the last cable, defendant replied on August 8, 1921, by cable, as follows:

"Wrote you August second outlining just what we could do."

On the same day it also wrote a letter to the plaintiff and inclosed therewith a copy of its letter of August 2d. Referring to the latter letter in its letter of August 8th, defendant said:

"We cannot change from this, and, as soon as you get this, it will be necessary for you to cable us whether our terms and conditions are acceptable to you."

On August 22, 1921, plaintiff wrote the defendant as follows:

"I beg to acknowledge receipt of your letter of the 8th inst., and in reply have cabled to you that I am coming by first boat to see you. I have been able to book a berth on the steamship Berenjeria leaving England Sept. 10/21. This is the first boat available. I cannot understand why you have changed the conditions of contract. We are willing to carry out the contract in every particular.
*　*　*

"I must be getting two machines ready at once. The $10,000 at the bank you can get at once, if you have not already received. We have also pulled down a furnace and rebuilding entirely for those machines. I hope to see you about Sept. 21 at your works, but I will wire you on arrival the exact date."

On August 25, 1921, the Midland Bank cabled the National Bank as follows:

"Test One Ninety Two Two Reference Credit Twenty Seven A One Eight Nine Two Eight Favour Ober Nester Glass Account Lax Shaw Pay Against Receipt Only."

On August 26, 1921, the National Bank paid the defendant $10,000 and received therefor the following receipt:

"Obear-Nester Glass Co.
"St. Louis, August 26, 1921.

"Received of the First National Bank, of St. Louis, Mo., ten thousand dollars ($10,000) for payment of two (2) glass blowing machines to be shipped to the order of Lax & Shaw, Limited, Leeds, England, after an additional payment of thirty thousand dollars ($30,000.00) has been made.

"Obear-Nester Glass Company agrees to have the machines made, and ready for shipment as soon as possible after receipt of the ten thousand dollars, and Obear-Nester Glass Company agrees further to deliver to Lax & Shaw, Limited, or their authorized agent, papers covering the right to manufacture said machines as per our agreement."

Thereafter representatives of the plaintiff came to East St. Louis and further negotiations were carried on between the parties.

The answer of defendant contained a general denial of the allegations of plaintiff's petition and a counterclaim. In its counterclaim defendant, among other things, alleged: That in the month of September, 1921, plaintiff orally agreed with defendant to accept the terms and conditions for the sale of the patent rights and machines, outlined in defendant's letter of August 2d and confirmed by its cable and letter of August 8th, except that it was agreed that $31,000 should be paid, instead of $30,000, on or before December 1, 1921, the additional $1,000 to cover certain extra parts; that the plaintiff had failed and refused to pay to the defendant the sum of $31,000 in accordance with the terms and conditions of said contract; and that defendant was ready and willing to perform the contract on its part. It prayed for the recovery of $31,000 as damages for breach of the contract.

At the commencement of the trial, plaintiff voluntarily dismissed the second count of its petition.

The lower court refused to permit the defendant to prove the contract alleged in its counterclaim, on the ground that it was within the statute of frauds. It instructed the jury to find for the plaintiff and submitted to the jury the amount of damages. The jury assessed the damages in the sum of $31,246. Judgment was entered on the verdict, and the defendant sued out a writ of error therefrom to this court.

The contentions of the plaintiff are:

(1) That the instrument executed by the parties on June 6, 1921, contained an implied promise on its part to purchase two No-Boy Machines; and

(2) That the contract set up in defendant's counterclaim was within the statute of frauds and nonenforceable.

The contentions of the defendant are:

(1) That the instrument executed by the parties on June 6, 1921, contained no binding promise on the part of the plaintiff, was without consideration, and therefore did not constitute an enforceable contract;

(2) That the payment made by the national bank constituted an acceptance on the part of the plaintiff of the terms of defendant's letters of August 2d and 8th;

(3) That the portion of the contract set up in defendant's counterclaim, which cov-

ered the sale of patent rights, was severable from the other portions of the contract and was not within the statute of frauds; and

(4) That there was a part payment which took the entire contract without the statute. [1] The instrument of June 6, 1921, was without consideration, unless there can be found therein an implied promise on the part of the plaintiff to purchase two machines. The language used imports no such meaning. It says: "This option to expire on August 6, 1921, unless the said John S. Shaw order machines (two) and molds before that date; then the option shall extend to December first, 1921," This clearly indicates that the parties contemplated plaintiff might or might not order the machines. The instrument provided what result would follow if the machines were ordered, and what result would follow if they were not ordered.

[2] It is equally clear, from the subsequent correspondence between the parties, that their minds had not met upon the terms of a contract up to and including August 26, 1921, when the national bank made the payment of $10,000 to the defendant and took the latter's receipt therefor. Plaintiff's letter of August 22d shows it believed that it then had a contract and that defendant was undertaking to change the terms and conditions of that contract. It shows, also, that plaintiff was not willing to accede to the changes. The purpose of plaintiff in making the payment was not to accept the terms of defendant's proposals in its letters of August 2d and 8th, but rather to carry out on plaintiff's part the contract for which it was contending. The acceptance of the receipt by the bank did not constitute an agreement on the part of the plaintiff to the terms set forth in the receipt, for the reason that the bank had no authority to so bind the plaintiff.

Therefore, if any contract was entered into between the parties, it must have been after the representatives of the plaintiff arrived at East St. Louis, in September, 1921. Defendant in its counterclaim alleges that a contract was then made. The correspondence between the parties during the months of September, October, and November, indicates that they reached an agreement for the sale of the patent rights, two machines, molds, and extra parts, at East St. Louis, in September, 1921. However, this agreement rested in parol, except in so far as it may have by reference incorporated previous written offers. The question then arises: Does the statute of frauds forbid its enforcement? The learned trial judge answered this question in the affirmative.

[3] A contract for the sale of a patent right is not within the statute of frauds. Whitcomb v. Whitcomb, 81 A. 97, 85 Vt. 76, Ann. Cas. 1913E, 1015. Likewise an agreement for the sale of the right to obtain a patent is not within the statute. Dalzell v. Dueber Watch Case Mfg. Co., 13 S. Ct. 886, 149 U. S. 315, 37 L. Ed. 749; Pressed Steel Car Co. v. Hansen (C. C. Pa.) 128 F. 444 (C. C. A. 3) 137 F. 403, 71 C. C. A. 207, 2 L. R. A. (N. S.) 1172.

[4-6] Where part of a contract is within the statute of frauds, the whole contract, if it is entire and indivisible, is nonenforceable; but, if the contract is divisible, then that part which is not within the statute may be enforced. 27 C. J. p. 318, § 404; 25 R. C. L. pp. 703, 704, §§ 346, 347; Davis et al. v. Carnegie Steel Co. (C. C. A. 6) 244 F. 931, 157 C. C. A. 281; Quirk v. Bank of Commerce & Trust Co. (C. C. A. 6) 244 F. 682, 157 C. C. A. 130. Defendant's offer of proof of the alleged parol agreement does not show fully the terms and conditions of that agreement. Counsel for defendant in their brief say that under the provisions thereof plaintiff agreed to accept the terms set forth in the receipt given to the national bank by the defendant, and that, in addition thereto, defendant agreed to furnish certain additional extra parts, to send one J. M. Young, an engineer employed by defendant, to England to install the machines and start the operation thereof, and to apply for the patents and assign them when obtained, and plaintiff agreed to pay $1,000 additional for the extra parts and to pay Young a salary and certain expenses. A contract is entire when its terms, nature, and purpose show that the parties intended and contemplated that each and all of its parts and the consideration should be common each to the other and interdependent. The purpose of plaintiff in purchasing the patents was to obtain the right to install and use the machines in its own plant and not to manufacture them for sale. The agreement to build two of the machines, and to send defendant's engineer to England to install and place them in operation, rendered the patent rights of much more value to the plaintiff. The two machines, without the right to manufacture and use them, would have been of little value to plaintiff. The provisions for the sale of the patent rights and for the sale and installation of the machines were directly related. Both were necessary to the common purpose which actuated plaintiff in making the contract. The parties intended that the contract should be performed as a whole. In our opinion it was entire and not divisible.

[7] There was no memorandum in writing signed by the plaintiff. No part of the goods were accepted and received by the buyer. The entire contract is therefore within the statute of frauds and nonenforceable, unless the buyer gave something in earnest or part payment. The defendant contends that the payment of $10,000 constituted a part payment within the meaning of the statute. The contract set up in the counterclaim was entered into at East St. Louis, Ill. It is unnecessary, however, to determine whether the law of the place where the contract was made or the law of the place where it was sought to be enforced applies (see 27 C. J. p. 124, § 3), for the reason that there is no material difference in the provisions with reference to the sale of goods, wares, and merchandise in the Illinois and Missouri statutes, both being substantially the same as the seventeenth section of the English act.

[8-10] Under these acts it is not necessary that the payment be made at the time of the making of the contract. It may be made and received afterwards. 27 C. J. p. 253, § 297; 25 R. C. L. p. 620, § 236. However, in the instant case, the national bank paid the defendant the sum of $10,000 before any contract had been entered into between the parties. By reason of this payment there arose an implied contract on the part of the defendant to repay the plaintiff the sum of $10,000. To constitute a part payment within the statute of frauds, there must have been an actual discharge of defendant's liability to plaintiff upon such implied contract. Walker v. Nussey, 16 M. & W. 302, 16 L. J. Exch. 120, 21 Eng. Rul. Cas. 18; Scott v. Mundy et al., 188 N. W. 972, 193 Iowa, 1360, 23 A. L. R. 460; Galbraith v. Holmes, 43 N. E. 575, 15 Ind. App. 34; Gorman v. Brossard, 79 N. W. 903, 906, 120 Mich. 611; Brabin v. Hyde, 32 N. Y. 519; Young v. Ingalsbe, 102 N. E. 590, 208 N. Y. 503; Norwegian Plow Co. v. Hanthorn, 37 N. W. 825, 71 Wis. 529; Milos v. Covacevich, 40 Or. 239, 66 P. 914; Johnson v. Tabor, 57 So. 365, 101 Miss. 78; Mahan v. U. S., 16 Wall. (83 U. S.) 143, 21 L. Ed. 307; notes, 125 Am. St. Rep. 398, 21 Eng. Rul. Cas. 23, 27 Eng. Rul. Cas. 623, 23 A. L. R. 473; 25 R. C. L. p. 619, § 235; 27 C. J. p. 254, § 301.

The rule is stated in 27 C. J., supra, as follows:

"The actual discharge, in whole or in part, of an antecedent debt due to the buyer, will constitute a payment within the statute. But a mere agreement to credit the price of the goods on such indebtedness will not suffice. There must be an actual cancellation and discharge of the indebtedness, * * * on the books of the creditor, or a written receipt executed by him, or some other like unequivocal act not resting in mere words which will bind him. An entry on a separate memorandum book, or on a blank leaf of an account book, is not sufficient as a part payment."

Whether in the instant case there was an actual discharge in whole or in part of the liability which arose out of the prior payment, sufficient to constitute a part payment under the statute of frauds, cannot, in our judgment, be determined from this record.

If the defendant can prove such a part payment as to take the parol contract, made in September, 1921, without the statute of frauds under the rules above stated, then it should be permitted to offer proof in support of the contract set out in the counterclaim. If the defendant cannot establish its counterclaim, plaintiff by an appropriate action for money had and received would be entitled to recover the $10,000 paid to the defendant.

The cause is reversed and remanded, with instructions to grant a new trial.