**MACIAS et al. v. KLEIN et al.**

Civ. A. 7844.

United States District Court
W. D. Pennsylvania.

July 17, 1952.

Harry Alan Sherman, Pittsburgh, Pa., Wapner & Wapner, by Joseph M. Wapner, Los Angeles, Cal., for plaintiff.

John A. Metz, Jr., Pittsburgh, Pa., for defendant, Oakland Truck Sales, Inc.

Alexander D. Rosenbaum, Pittsburgh, Pa., for defendant Klein.

Maurice Kessler, Pittsburgh, Pa., for defendant Rosenzweig.

MARSH, District Judge.

In this action Macias, plaintiff-seller, instituted suit against the defendant-buyer, Oakland Truck Sales, Inc.,[1] to recover the purchase price due as a result of an alleged breach of contract. The parties agree that on September 13, 1948, Macias, acting as sole owner of Henry's Truck Parts and Sales, and Klein, acting on behalf of Oakland Truck Sales, Inc., entered into an oral contract for the sale of truck parts in the amount of $7,800 and that Klein gave Macias a check of Oakland Truck Sales, Inc. in the amount of $2,000 as part payment.

The remaining facts were in dispute and the jury by special verdict, and the court pursuant to rule 49(a), F.R.C.P., 28 U.S.C., found them to be as follows. In October, 1948, in a telephone conversation between Macias and Klein, the parties mutually altered the quantities of the parts sold,[2] which alterations increased the total price from $7,800 to $13,236.50. Macias wrote down the new quantities agreed upon during the telephone conversation. Both agreed to apply the part payment made on the original contract of sale to the modified contract.[3] Accordingly, Macias deducted the $2,000 from $13,236.50 on the bill; delivered the parts to the Union Pacific Railroad in California for shipment to Sid's Truck Parts at Detroit, Michigan, as instructed by Klein; and sent a sight draft with bill of lading attached in the sum of $11,236.50 to the Detroit bank designated by Klein.

When the parts arrived in Detroit the defendant refused to honor the draft and accept the shipment. The Railroad notified Macias of defendant's refusal to accept the goods. Macias asked an employee of the Railroad what the total freight and demurrage charges would be if the goods were reshipped to California and he was told they would amount to about $1,200. He then directed the Railroad to ship the goods back. When the goods arrived in California, Macias was informed that the freight bill was $6,400. Macias was unable to pay this amount and the Railroad, on March 17, 1949, sold the goods at a public sale at its warehouse for $1,448.16. Macias did not attend this sale.

The jury found that the plaintiff was entitled to recover the price of the parts sold and delivered to the Railroad in the sum of $13,236.50 and judgment was entered by the court in the sum of $10,864.50, with interest (see footnote 9), credit being given for the part payment of $2,000 with interest since September 13, 1948.

Defendant moved in the alternative for a directed verdict or for a new trial. We are of the opinion that both should be refused.

In support of its motion for a directed verdict, defendant contends that the modified contract does not satisfy the Pennsylvania Statute of Frauds, 69 P.S.Pa. § 42, and that this court, sitting as a court of Pennsylvania, can not afford plaintiff the remedy he seeks.[4] Of course, if we find that the modified contract has been

1. Oakland Truck Sales, Inc. is the only remaining defendant. At the trial of the case, the court directed verdicts in favor of other named defendants.

2. The only item on the original contract which was not on the modified contract was tie rod ends. (R. 72). Plaintiff's Exhibits 1 and 3.

3. Plaintiff testified that Klein told him "Just put it on the bill, deduct it from this bill." (R. 106).

4. As the jurisdiction of this court rests upon diversity of citizenship and the jurisdictional amount, the substantive rights of the parties are to be determined

according to local law, Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, and this requirement includes the local conflict of laws rule. Klaxon Company v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477. The Restatement of the Law of Conflict of Laws, § 602, provides that "If the law of the forum forbids action unless certain forms have been employed, no action can be maintained on a foreign cause of action without satisfying such requirements of form." See Manufacturers' Light & Heat Co. v. Lamp, 269 Pa. 517, 112 A. 679.

taken out of the Statute of Frauds this contention fails.

No Pennsylvania decision in point has been cited by the parties nor has any been found by the court. In such case the law of Pennsylvania must be determined " 'from all the available data'." See Stentor Electric Manufacturing Co., Inc. v. Klaxon, 3 Cir., 1942, 125 F.2d 820, 824.[5]

It is beyond dispute that when the buyer gave his check for $2,000 in part payment to the seller, the condition of the Statute was satisfied as to the sale of the truck parts. The court is of the opinion that parol evidence was admissible to show the terms of that sale 'and the subsequent modifications thereof. The Statute of Frauds itself does not expressly prohibit the modification of a parol contract which by a part payment has been taken out of the Statute and, in our judgment, it would be judicial legislation to impose such a limitation without some impelling reason therefor which we are unable to perceive.

It is obvious that the testimony concerning the alterations does not become the less credible because contemporaneously or subsequently thereto another part payment was not made. Indeed, it seems to be anomalous if alterations of a valid sale, which had been taken out of the Statute of Frauds, could not be made without requiring the seller to return the fixed part payment to the buyer in order to have it repaid to him again at the times when the parties consummated each change. As a practical matter business men, after agreeing upon alterations in a parol sale, would act just as the parties in the instant case acted.[6]

Defendant argues that the part payment cannot operate to take the altered contract out of the Statute of Frauds and cites the dicta in Ryan v. Gilbert, 320 Mass. 682, 71 N.E.2d 219, 221, 170 A.L.R. 241 (1947) in support of its contention. In our opinion this decision turned upon the fact that the prior oral contract was entered into on Sunday and the part payment was made on the same day. In Massachusetts such a contract is invalid and money paid under such a contract cannot be recovered by the payor. "The plaintiff no longer had any legal interest in the money and therefore could not apply that money in the defendants' hands as a payment on the oral agreement." In view of the fact that the original payment could not be recovered by the payor, the attempt to adopt said payment was not the discharge of any liability for money had and received.[7]

In the instant case, however, the part payment was made on a valid contract and it could have been recovered by the buyer if the sale had been cancelled. In addition, the jury found that the parties agreed to apply the $2,000 as a part payment upon the modified contract and that sum was actually credited by the seller on the bill (Exhibit No. 3) and in the sight draft (Exhibit No. 5). We hold that the Statute of Frauds was satisfied.

Defendant's motion for a new trial is based upon the contention that the court

---

5. We also note that under Section 334 of the Restatement of the Law of Conflict of Laws "the law of the place of contracting determines the formalities required for making a contract." Since plaintiff did not know where Klein was when he spoke to him on the telephone, the place of contracting could be California, Michigan or Pennsylvania, depending on where the acceptance was made. See Restatement of the Law of Conflict of Laws, § 326(c). Absent controlling decisions to the contrary by the courts of California or Michigan the determination by this court "from all the available data," that the contract has been taken out of the Pennsylvania Statute of Frauds also determines that the contract satisfies the formalities of the Statutes of Frauds of California Civ.Code, § 1624a, and Michigan, Comp.Laws 1948, § 440.4. The Three Statutes are substantially the same.

6. Compare with Roberts v. Williams, 6 Wash.2d 599, 108 P.2d 334, 131 A.L.R. 1246 (1940), and Obear-Nester Glass Co. v. Lax & Shaw, 8 Cir., 1926, 11 F. 2d 240. In neither of these cases was the part payment made contemporaneously with the parol contract in litigation.

7. See Obear-Nester Glass Co. v. Lax & Shaw, supra (footnote 6).

erred in instructing the jury that if plaintiff was entitled to recover, he was entitled to recover the price or the balance due thereon. Uniform Sales Act, § 63(1).

The court instructed the jury that the property in the goods had passed to the buyer when they were delivered to the Railroad, designated by the buyer, in California. Uniform Sales Act § 19(2). The defendant excepted to this part of the charge, not because the court had usurped the function of the jury by stating that the property had passed, but because "it is the undisputed evidence that the bill of lading was made * * * to the order of [the seller] * * *." (R. 257). This fact, however, does not necessarily prevent the property in the goods from passing to the buyer. Uniform Sales Act § 20(2).

Defendant argues that notwithstanding the property passed to the buyer, the measure of plaintiff's recovery is not the price, but damages for nonacceptance. The reason advanced in support of this view is that when Macias ordered the merchandise returned to Los Angeles he made an election to sue for damages under Section 64 (1) of the Sales Act instead of the price under Section 63(1). The injustice of defendant's position is that it permitted the case to be pleaded, pretried and tried by plaintiff as an action for the price. Nowhere during the trial does defendant mention that plaintiff by his actions *had elected as his remedy* an action for damages under Section 64(1). It was not until well into the defense that defendant first intimated that plaintiff should be suing for damages.[8] If defendant is correct, a directed verdict should have been entered against the plaintiff at the close of his case for want of proof of damages. The plaintiff did not undertake to prove the market value of the parts at the time and place of delivery. If he had done so, such evidence would have been inadmissible. Defendant did not move for a directed verdict at the close of plaintiff's case. (R. 124–5).

The defense of election of remedies is an affirmative defense and should have been pleaded. Rule 8(c), F.R.C.P.; Bagwell v. Susman, 6 Cir., 1947, 165 F.2d 412, 415.

Notwithstanding that this defense was not pleaded defendant insists that the court now hold as a matter of law that plaintiff elected his remedy to sue for damages when he ordered the merchandise reshipped to California. But the court does not agree that plaintiff's instruction to the Railroad *ipso facto* constituted such an election as a matter of law. The issue of election of remedies, if properly pleaded, would have been one of fact for the determination of the jury. Because defendant neglected to plead it affirmatively, the evidence relating to plaintiff's directions to the Railroad was immaterial and of no effect in an action for the price. If this is error and the question should have been determined at the trial, under Rule 49(a), F.R.C.P., the court would find as a fact that under the circumstances the plaintiff did not exercise such dominion over the merchandise as constituted an election of the remedy to sue for damages instead of the price. Indeed, the evidence seems to negative any intention on the part of plaintiff to elect the remedy of an action for damages except in the event he could have obtained possession of the goods from the Railroad at a cost of $1,200. The fact that plaintiff never regained possession of the merchandise distinguishes this case from many of those cited by the defendant.

Accordingly, plaintiff's objection to testimony concerning market value should have been sustained (R. 166) and the defendant's requests for charge on damages (Points Nos. 4, 5, 6, and Additional Points 3, 4) were properly refused. Another reason for refusing these requests is that they appear to the court, now as at trial, to be confusing, and the original points seem to be inconsistent with the additional points

---

8. The defendant argued mitigation of damages at length (11 pages of the record; R. 167 to 177, inclusive) and then proposed that the measure of damages was the difference between the contract price and the market price. (R. 181–182). Its requests for charge advance both propositions.

which were presented almost as an after-thought.

It will be noted, however, that defendant did persuade the court to instruct the jury on mitigation of damages and the jury was instructed that it could deduct from the price any damages it found from the evidence the conduct of plaintiff might have caused to defendant. (R. 250–1). This, we think, was more than defendant had a right to expect in a suit for the price, and was probably responsible for the loss of interest to plaintiff.[9]

An order will be entered in conformity with this opinion.

9. The court affirmed plaintiff's second point for charge and instructed the jury that it could allow plaintiff interest. (R. 255). Since the jury failed to include interest in the verdict, that portion of the order of court dated October 23, 1951, in which we allowed interest to plaintiff will be vacated.