# MASON CITY PRODUCTION CREDIT ASSOCIATION v.
## SIG ELLINGSON & COMPANY.[1]

June 30, 1939.

No. 32,151.

[1]Reported in 286 N. W. 713.

538

[redacted]

*Myers & Snerly* and *Wilson & Blethen,* for appellant.

*Joseph F. Cowern, W. A. Westfall,* and *Robert L. Chesire,* for respondent.

HOLT, JUSTICE.

There is no dispute as to the facts. Plaintiff is a corporation engaged in Iowa in the business of loaning money to farmers and stock raisers on chattel mortgage security. Defendant is a Minnesota corporation doing business as a livestock commission merchant or market agency at the stockyards of South St. Paul. This action is to recover for the conversion of 21 steers. These steers were shipped on trucks by M. O. McCoy from his farm in Winnebago county, Iowa, to defendant at the Union Stockyards, South St. Paul, and there sold by it November 17, 1936. Plaintiff bases its right to recover as holder of a chattel mortgage, duly given by Mr. M. O. McCoy and wife, August 24, 1936, upon these steers and other stock and property to secure a promissory note by the mortgagors to plaintiff for $5,387.95, which mortgage was duly filed for record August 25, 1936, at 9:30 o'clock a. m. in the office of the recorder in and for Winnebago county, Iowa, and is now there on file. Upon stipulated facts and uncontradicted testimony, the court made findings in favor of plaintiff. Defendant appeals from the judgment awarding plaintiff $1,002.90.

The real question presented by the appeal is whether defendant, a registered commission sales or market agency under the Packers and Stockyards Act of congress, 7 USCA, §§ 181-229, is liable in conversion for the sale of these mortgaged steers, shipped from Iowa to South St. Paul, this state. Defendant had no actual knowledge of the mortgage. It sold and accounted to McCoy, the mortgagor and shipper of the steers, for the proceeds of the sale.

In the brief defendant questions the validity of the mortgage in that the proof does not identify these steers as covered thereby. We think there is no merit in the point. It was stipulated that on November 16, 1936, McCoy shipped from his place and farm in Winnebago county, Iowa, 21 steers, by truck to St. Paul Union Stockyards, South St. Paul, this state, which were received by defendant and there sold by it the next day. The chattel mortgage sold, conveyed, and mortgaged the personal property described and kept on $S\frac{1}{2}$ of $NE\frac{1}{4}$ and $NW\frac{1}{4}$ of $NE\frac{1}{4}$ of section 21 and $NW\frac{1}{4}$ of $NW\frac{1}{4}$ and $S\frac{1}{2}$ of $NW\frac{1}{4}$ of section 22 in township 98, range 25 of Winnebago county, there being 113 steers enumerated, "together with all increase and increase of increase of said property, and all additions to or substitutions therefor, and all other personal property which the mortgagor now owns or may acquire during the life of this mortgage," etc. According to the law of Iowa, a chattel mortgage attaches to after-acquired property. Hence plaintiff had a lien on these steers whether they were on the farm when the mortgage was made and filed for record or they were acquired and placed on the farm by the mortgagor thereafter. They were shipped from the farm by McCoy on November 16, 1936. We need only cite Lowden Sav. Bank v. Zeller, 196 Iowa, 1205, 194 N. W. 966, where earlier Iowa cases are cited. The case of Central State B. & T. Co. v. J. P. Squires & Co. 225 Iowa, 415, 280 N. W. 594, cited by plaintiff, is not in point, for after-acquired property of the sort involved in the suit was there not mortgaged.

By Keenan v. Stimson, 32 Minn. 377, 20 N. W. 364, the law was long ago settled in this state that a chattel mortgage duly made and recorded in accordance with the laws of Iowa is constructive notice of the rights of the mortgagee in the chattels mortgaged when brought into this state and here sold. The rule therein laid down was expressly approved in Silver v. McDonald, 172 Minn. 458, 215 N. W. 844. The fact that the legal title of the chattel is transferred by a mortgage executed in this state to the mortgagee, and only a lien is given the mortgagee on the chattel by a mortgage executed thereon in the state of Iowa, does not affect the decision herein, as we see it. In Smith & Co. v. McLean, 24 Iowa, 322, it

was held that a chattel mortgage executed and filed for record in Kansas, where the mortgagor lived and the mortgaged property was located, was constructive notice to all the world so that though the property mortgaged was afterwards removed to Iowa and sold to one who had no actual notice of the mortgage, the mortgagee could there replevy the same. That is, the rights of the mortgagee as fixed under the law of Kansas attached to the property though found in the hands of an innocent *bona fide* purchaser in Iowa; and that the courts of Iowa would enforce such rights. The doctrine of Smith & Co. v. McLean is still the law in Iowa and authorizes a mortgagee to sue in conversion those who deal with the mortgaged property in disregard of his lien. Capital Loan Co. v. Keeling, 219 Iowa, 969, 259 N. W. 194. In First Nat. Bank v. Ripley, 204 Iowa, 590, 215 N. W. 647, a chattel mortgage duly executed and filed in this state on property here owned was adjudged superior to one executed and filed after the property was removed by the mortgagor to Iowa. The statute of Iowa (Code of Iowa, 1935, § 10020) provides that after the due filing of a chattel mortgage with the recorder it "shall be deemed complete as to third persons, and have the same effect as though it had been accompanied by the actual delivery of the property sold or mortgaged." Our statute (2 Mason Minn. St. 1927, § 8348) as to the effect of properly filing the mortgage, is: "Every such instrument so filed shall be notice to all persons of the existence and terms thereof." Close v. Hodges, 44 Minn. 204, 46 N. W. 335; Hogan v. Atlantic Elev. Co. 66 Minn. 344, 69 N. W. 1. This mortgage contained a covenant that the mortgagors would not remove any of the property mortgaged from the premises described or sell or dispose of any part thereof without written consent of the holder of the mortgage. The statute and decisions of Iowa and this state are in substantial accord that due filing of a chattel mortgage is notice to all the world of its existence and terms. The decisions of these two states are also in agreement that the holder of such mortgage, so filed where made, may in the courts of either state have his remedy against anyone who has dealt with the mortgaged property in disregard or defiance of such hold-

er's rights therein. That this practice is based on comity and not on any statute ought not to lessen its binding force, considering that it has been established law in both this and our neighboring state for over half a century.

The secretary and treasurer of plaintiff testified that there was still due and unpaid on the promissory note secured by this chattel mortgage the sum of $2,975.55 and interest. The note was produced by the witness and received in evidence without objection. We consider futile the attempt to challenge as unsupported the finding "that plaintiff has at all times been, and now is, the owner of said note and chattel mortgage."

The chief effort of defendant on this appeal is to establish that it "being a federal public utility, licensed by the federal government to act as such and required to conduct its business in accordance with the federal law, the question of its liability is to be determined by the federal law, and not by the laws of the state of Iowa or the state of Minnesota." In short, the contention is that by the Packers and Stockyards Act (42 St. 159, 7 USCA, §§ 181-229) congress took over the entire field of raising and marketing livestock for human consumption, and that defendant, registered thereunder as a market agency, must for a fixed commission sell any shipment consigned to it for sale and account to the consignor for the proceeds regardless of the consignor's title or interest in the consignment. It is the law that defendant, registered as a buyer and seller of livestock on commission, at the stockyards of South St. Paul, is a market agency under the act and must conform to the lawful rules and regulations made in virtue thereof by the secretary of agriculture. United States v. American Livestock Comm. Co. 279 U. S. 435, 49 S. Ct. 425, 73 L. ed. 787; Tagg Bros. & Moorhead v. United States, 280 U. S. 420, 50 S. Ct. 220, 74 L. ed. 524; United States v. Donahue Bros. Inc. (8 Cir.) 59 F. (2d) 1019. Defendant says that since it is not at liberty to select its customers or principals for whom it sells it is unreasonable to hold it liable in conversion where, as a mere agent, it is required by law to make a sale of mortgaged livestock.

The Packers and Stockyards Act was passed to remedy abuses that had grown up in the large stockyards located in various places of the nation, whereby, among other wrongs, raisers, feeders, and shippers of livestock were charged unequal and excessive rates for services rendered in handling and selling the stock after reaching the yards. The occasion for and the purpose of the act we find exhaustively treated in Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. ed. 735, 23 A. L. R. 229. It is hard to believe that congress by this act intended to take over the entire field of the livestock industry, not only the marketing thereof at the stockyards, but also to control all the steps of those who raise livestock for such market. It is common knowledge that raisers and feeders of livestock for slaughter often borrow money in order to carry on and can do so only by giving as security chattel mortgages upon the stock being raised and fed for the market. There is no indication in the history of this legislation nor in the act itself of an intention to shield either purchasers or market agencies from liability on account of wrongful sales in the stockyards of livestock not owned by the consignors or covered by chattel mortgages of which the purchasers or market agencies may be in fact ignorant. Courts should be slow to conclude that the act was designed to supersede local law respecting the force and effect of chattel mortgage security upon livestock received at public stockyards.

Defendant cites and relies on cases holding common carriers not liable in conversion for transporting stolen property or property covered by chattel mortgages which forbid the property being moved. A few of these are Shellnut v. Central of Georgia Ry. Co. 131 Ga. 404, 62 S. E. 294, 18 L.R.A.(N.S.) 494; Hall v. Cumberland Pipe Line Co. 193 Ky. 728, 237 S. W. 405; Robert C. White Live Stock Comm. Co. v. C. M. & St. P. R. Co. 87 Mo. App. 330; Dixon v. Southern Pac. Co. 42 Nev. 73, 172 P. 368, 177 P. 14, 179 P. 382, L. R. A. 1918D, 960; A. T. & S. F. Ry. Co. v. International L. & Inv. Co. (8 Cir.) 247 F. 265. It is, however, to be noted that the carrier in transporting does not undertake to deal with or affect in any manner the rights or title of the owners or chattel mortgagees in the shipments. The same applies to the cases of warehousemen

·cited by defendant, as, for instance, Roanoke Banking Co. v. Dunson & Bros. Co. 30 Ga. App. 341, 117 S. E. 826; Abernathy & Long v. Wheeler Mills & Co. 92 Ky. 320, 17 S. W. 858, 36 A. S. R. 593. In the Roanoke Banking Co. case there was not constructive notice of the chattel mortgage because of noncompliance with a peculiar statute of Georgia relating to filing in that state of mortgages given upon chattels while in another state and subsequently moved into Georgia. In the Abernathy case nothing is stated in the decision as to whether or not the chattel mortgage was properly filed. In this connection we may cite Globe G. & M. Co. v. De Tweede N. W. & P. Hypotheekbank (9. Cir.) 69 F. (2d) 418, as recognizing as the law that a public warehouseman is. charged with constructive notice of a duly filed chattel mortgage and may be sued in conversion for dealing with the mortgaged property in disregard of the terms of the mortgage; however, the decision of the trial court in favor of the mortgagee was reversed on the ground that it was error to exclude all oral evidence of the mortgagee's consent to the removal of the mortgaged goods to another state because not in writing.

Rule 17 promulgated by the secretary of agriculture by authority of the act has been discussed by both parties because the trial court deemed subd. (c) thereof significant. We think the rule, though to be obeyed by defendant, was not intended to govern the rights of holders of chattel mortgages on livestock brought to public stockyards. And we agree with defendant that the rules of the secretary of agriculture have not the standing or force of statutes.

Defendant contends that this judgment obstructs and unduly burdens interstate commerce and thus violates the commerce clause of the federal constitution; and also that it deprives defendant of its property and of the equal protection of the law guaranteed by the fourteenth amendment to that constitution.

The losses occasioned a market agency like defendant from disposing of stolen livestock or of livestock mortgaged and wrongfully consigned to it contrary to the terms of the duly filed mortgage cannot be assumed to be of a magnitude sufficient to unduly burden

interstate commerce. There is nothing in the record as to the extent thereof. Storage and handling of grain at public elevators involve much the same opportunities for wrong by which loss may at times fall upon those who innocently had a hand in the disposition of the grain stolen or mortgaged. Still interstate commerce in grain has not been held unduly burdened by the rightful owner or mortgagee being redressed. Hoven v. McCarthy Bros. Co. 163 Minn. 339, 204 N. W. 29.

If we are right in the conclusion that the Packers and Stockyards Act was not intended to and does not disturb or supersede local or state law in respect to chattel mortgages, the judgment appealed does not contravene the fourteenth amendment nor any other provision of the federal constitution.

We do not feel called upon to enter into a discussion of point X made by defendant, namely, that by holding this chattel mortgage valid and its filing for record in Iowa as imparting constructive notice of its existence and terms to citizens and residents of this state who deal with the property mortgaged after being wrongfully brought into this state the court violates Minn. Const. art. 3, and U. S. Const. art. I. The courts of the states of Iowa and Minnesota have for such a long time, on the principle of comity, enforced rights of holders of chattel mortgages validly made and filed in either state, though the property has thereafter been wrongfully removed by the mortgagor to the other state, without the legislature of either state making any move to change the course pursued by the courts, that we must conclude that the lawmakers do not consider their domain invaded. The same may be said in respect to the congress, unless we are mistaken in our conclusion that the Packers and Stockyards Act has not changed or abrogated local law as to chattel mortgages.

The judgment is affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.