[No. 27748. Department One. December 13, 1940.]

EDWARD J. ROBERTS, *Respondent*, v. HANNAH E. WILLIAMS, *Appellant*, M. G. SHAIN, *Respondent.*[1]

*Roy D. Robinson* and *Richard D. Kneisley,* for appellant.

*Arthur Grunbaum* and *James M. Ballard,* for respondents.

ROBINSON, J.—This case presents a question as to whether or not the appellant entered into a contract with the respondent to buy a boat. Since, after a careful examination of the record, we have concluded that the trial court's findings of fact are supported by a

[1] Reported in 108 P. (2d) 334.

preponderance of the evidence, this opinion will be largely confined to the legal question presented. An understanding of that question requires an outline of the factual background.

The appellant's seventeen year old nephew was very anxious to own a boat. He discovered one to his liking at Shain's boathouse, in Seattle, which the owner, Edward J. Roberts, had authorized Shain to sell for $3,250. The boy took his aunt to see Mr. Shain. She left Mr. Shain's premises with the following receipt, signed by Mr. Shain:

"July 20, 1938

"Received of Mrs. O. B. Williams the sum of One Hundred Dollars as a deposit on the 33' Trimmer Ship 'Neponset' under the following conditions:—

"A trial run is to be run on Sat. or Sunday next with the privilege to Mrs. O. B. Williams to request the return of her deposit if not satisfied.

"It is further understood that the offer is $2,750.00 to Mr. Ed. Roberts and in case Mr. Roberts refuses to sell for said price, then Mr. Shain retains the privilege of returning the above mentioned $100.00 deposit and no damages are to be involved."

On July 23, 1938, Mrs. Williams and her nephew went with Shain on a trial run. When they returned, Mr. Roberts was at the boathouse. The evidence as to the conversation which then took place is in sharp conflict, but the trial judge accepted the story told by Shain and Roberts and corroborated, in part, by a disinterested witness. It was categorically denied by Mrs. Williams; but the nephew, who all admit was present, and could have refuted it if untrue, was not produced as a witness, although the court, on several occasions during the trial, indicated its desire to hear his testimony. The version of Shain and Roberts, accepted by the trial judge, was to the effect that Mrs. Williams offered Roberts $2,500 for the boat, which Roberts

refused; that he started to leave, saying that he had to catch a train to San Francisco; that, after he had reached his car, the boy came running up to him and said that his aunt would pay $2,750 after all. Roberts returned to the boathouse. Mrs. Williams took out her checkbook, and Roberts took out the bill of sale required for the transfer of a boat of that class. Mr. Shain then reminded him, and this testimony comes from Mrs. Williams herself, that it would be necessary for him to sign the bill of sale before a notary.

It is certain, at least, that the parties went downtown in search of a notary. It being late on a Saturday afternoon, they did not find him in. The appellant testified that Roberts then said: "I will leave it all up to you, Mr. Shain, if this deal goes through," and Shain replied: "Well, I am going to take out what you owe me," and Roberts answered: "All right." The appellant and Shain went back to the boathouse. After some conversation between them, Shain drew up and signed the following instrument:

"July 23, 1938

"Received of Mrs. Hannah E. Williams a check for Two Thousand Four Hundred and Seven Dollars and Seventy Cents ($2,407.70) payable to Edward J. Roberts, to be mailed to him in San Francisco along with a bill of sale for his launch the Neponset No. 30B159 which is to be signed and returned showing the launch free and clear to Mrs. Hannah E. Williams.

"Upon receipt of the new documents for the above mentioned launch, Mrs. Hannah E. Williams agrees to pay M. G. Shain the further sum of Two Hundred Forty Two Dollars and Thirty Cents ($242.30) in addition to One Hundred Dollars ($100) on July 20th already paid him, making a total of Two Thousand Seven Hundred and Fifty for the launch free and clear.

"M. G. Shain"

Mrs. Williams, however, wrote and delivered to Shain not only the check for $2,407.70 in favor of

Roberts, but also a check for $242.30, payable to Shain. She testified that it was understood and agreed between herself and Shain that she should have until the following Thursday to decide whether or not to take the boat, and the checks were to be held until that time. This, Shain vigorously denied.

At all events, Shain immediately mailed the $2,407.70 check and the original of the receipt to Roberts at San Francisco by air mail, special delivery. Roberts received the instruments at nine o'clock on the morning of Monday, July 25th. In the meantime, according to Mrs. Williams' testimony, she decided on Sunday, July 24th, not to take the boat, having come to the conclusion that it was too large and powerful to be safely handled by a seventeen year old boy. She testified that she telephoned Shain to that effect on Sunday, and on Monday morning, the 25th, went to his boathouse at or before eight o'clock and demanded the return of her checks. Shain denies this testimony *in toto,* but the trial court, after analyzing the conflicting testimony relating to that issue, held, for reasons which seem satisfactory to us, that Mrs. Williams' testimony was true. The formal finding, ultimately entered by the trial court, reads as follows:

"That subsequent thereto, towit, prior to or about 8:00 o'clock A. M. Monday, July 25, 1938, the defendant Williams did give notice to M. G. Shain, agent of plaintiff Roberts as aforesaid, that she did withdraw, revoke and countermand her offer to purchase the aforesaid boat and did demand the return of all the checks theretofore given as aforesaid."

It should be noted that this occurred at least an hour before Roberts received the $2,407.70 check at San Francisco, and before he executed the bill of sale.

In the early afternoon of the same day, Mrs. Williams placed a stop order on all three checks. The one

hundred dollar check had, however, been certified at Shain's request on July 23rd, and the $242.50 check, at some time on the 25th before Mrs. Williams arrived at the bank.

It is unnecessary to detail the facts concerning the subsequent tender of the bill of sale, protest of the check, etc. It will suffice for our present purpose to say that this action was brought by Roberts to collect the large check. Mrs. Williams entered a general denial, and cross-complained against Roberts and also against Shain, who, in the meantime, had come into the action as an additional plaintiff. The cross-action against Shain was for the amount of the two other checks. Shain cross-complained against Mrs. Williams for moorage of the boat after, as he alleged, she purchased it of Roberts on July 23rd.

The trial judge announced at the close of the trial that he was unable to find an enforceable contract. He found that, after the return from the trial trip, Mrs. Williams made an oral offer in the same terms as the original written offer, and that Roberts orally accepted it; but that nothing was then given in part payment. It was not contemplated that there should be. The parties intended immediate performance. Payment and delivery by bill of sale were to be concurrent acts. Either could have withdrawn from the contemplated transaction while on the way to the notary's office. Due to the failure to find the notary, no performance took place, and the oral agreement continued to remain void and unenforceable. It was in this condition when Mrs. Williams repudiated it on the following Monday morning at eight o'clock a. m. Upon this theory, judgment would go in favor of Mrs. Williams on all points.

About two weeks later, the trial judge called in the attorneys and orally delivered another and different

opinion, of which a transcription reads, in part, as follows:

"I have had some litigation since this case was tried that forced me to give a good deal of attention to this case. I don't recede at all from any of the facts that I found on the trial, but I am forced to change the conclusion which I announced. . . .

"It is conceded that on Saturday [Wednesday] Mrs. Williams left with Shain, the duly authorized agent for the sale of this boat, an offer of $2,750.00, and paid $100.00 to accompany the offer. The payment was a check, but was accepted by the agent as cash, which was binding upon Roberts. Now after the trial, I found, and without reviewing the facts to support that finding, that Mrs. Williams and Roberts agreed that he would take $2,750.00 and she would pay it. At that moment, the $100.00 previously deposited, in law became a payment upon the purchase price, and made it a binding contract. . . ."

■ It is well settled that, when an oral offer is made and orally accepted, a partial payment made after the oral bargain is concluded satisfies the requirements of the statute of frauds covering contracts for the purchase and sale of goods and chattels, unless the statute, as the statutes of some of the states do, inserts the words "at the time." 2 Williston on Contracts (Rev. ed.), 1614, § 566. But where a sum of money accompanies an offer to purchase a chattel, with the understanding that it is to be applied on the purchase if the offer is accepted, and the offer is withdrawn but immediately renewed in the same terms and is accepted by the seller, the money having never left his possession, can it be regarded as "part payment" within the terms of the statute? The parties have cited no cases in which this question has been considered.

We have found, through an extensive, though possibly not exhaustive, search of the law reports, that the question (omitting the fact of the momentary

withdrawal of the offer) was presented in the early cases of *Noakes v. Morey* (1868), 30 Ind. 103; *Howe v. Hayward* (1871), 108 Mass. 54, 11 Am. Rep. 306, and *Jennings & Silvey v. Dunham*, 60 Mo. App. 635. But in each of these cases the decision went off on a finding that the sum accompanying the offer was not intended to apply as a payment on the purchase price if the offer were accepted, but as a forfeit if, upon its acceptance, the offeror refused to go through with the transaction. We are clear that that was not the case here; for, although the words of the receipt given for the one hundred dollar check do not inevitably lead to that conclusion, evidence given by both parties does. Furthermore, when Shain and Mrs. Williams were making their arrangements for performance after Roberts left for San Francisco, they treated it as having been deposited as part payment, as the receipt made out at that time unmistakably shows.

There are two comparatively recent cases wherein the question was raised: *Burwell v. American Coke & Chemical Co.*, 7 F. (2d) 435, decided in the first circuit court of appeals in 1925, and *Obear-Nester Glass Co. v. Lax & Shaw*, 11 F. (2d) 240, decided in the eighth circuit a year later. The first of these also went off on a finding that the money deposited with the offer was not intended to apply on the purchase price. The second case is very nearly, if not altogether, in point, and tends to support the position of the appellant that the one hundred dollar check cannot be deemed a part payment, within the meaning of the statute.

The facts in the *Obear-Nester Glass Co.* case are extremely complicated. We think that they may be fairly simplified for our present purpose by saying that, during negotiations leading to a purchase, ten thousand dollars was paid by a bank acting for the offeror, and the question arose as to whether it could be considered

as a part payment with respect to an oral bargain subsequently arrived at. The court said, in part:

"Under these acts [the statute of frauds of the state where the bargain was made and the state where it was to be performed] it is not necessary that the payment be made at the time of the making of the contract. It may be made and received afterwards. 27 C. J. p. 253, § 297; 25 R. C. L. p. 620, § 236. However, in the instant case, the national bank paid the defendant the sum of $10,000 before any contract had been entered into between the parties. By reason of this payment there arose an implied contract on the part of the defendant to repay the plaintiff the sum of $10,000. To constitute a part payment within the statute of frauds, there must have been an actual discharge of defendant's liability to plaintiff upon such implied contract. [Long list of citations.]

"The rule is stated in 27 C. J., supra, as follows:

" 'The actual discharge, in whole or in part, of an antecedent debt due to the buyer, will constitute a payment within the statute. But a mere agreement to credit the price of the goods on such indebtedness will not suffice. There must be an actual cancellation and discharge of the indebtedness, . . . on the books of the creditor, or a written receipt executed by him, or some other like unequivocal act not resting in mere words which will bind him. An entry on a separate memorandum book, or on a blank leaf of an account book, is not sufficient as a part payment.'

"Whether in the instant case there was an actual discharge in whole or in part of the liability which arose out of the prior payment, sufficient to constitute a part payment under the statute of frauds, cannot, in our judgment, be determined from this record."

The citations which we have omitted in the above quotation support the rule which the court quoted from 27 C. J. The rule is obviously sound. If a contract of the class covered by the statute could be made by mere exchange of oral promises, plus a mere oral agreement to credit an antecedent debt, the transaction

would be wholly oral; whereas the statute requires, in addition to oral stipulations, some provable act, to-wit, partial delivery or the giving of something in earnest to bind the bargain, or part payment, or a note or memorandum in writing signed by the party to be charged.

The *Obear-Nester Glass Co.* case is not primarily concerned with the time of payment, but rather with whether payment was shown by a provable act. We do not think it follows from the rule quoted and the cases cited in that opinion that, when one makes an offer, especially when that offer is made in writing, and deposits with it a sum of money to serve as a partial payment if the offer is accepted, and the offer is subsequently accepted, the statute is not satisfied. In such a transaction, there is something more than mere oral promises and agreements. There is an additional provable act, directly related to the oral bargain.

However, if the headnotes to the case correctly express the actual decision of the court, the case must be considered as at least strongly supporting the contention of the appellant. We quote from the headnotes, as follows:

"Payment, to take contract out of statute, may be made and received after contract is made.

"Where plaintiff paid defendant an amount before any contract had been entered into between parties, defendant impliedly agreed to repay plaintiff that sum if contract was not consummated.

"To constitute part payment sufficient to take indivisible contract for sale to plaintiff of foreign patent rights and installation of machinery out of statute of frauds, defendant's liability to plaintiff on implied contract to repay to plaintiff sum advanced before any contract had been entered into between parties must have been actually discharged."

Assuming these headnotes to state the law, it is clear that, if at the time Mrs. Williams and Mr. Roberts

came to a bargain, its every requirement would have been satisfied had Roberts merely handed her the one hundred dollar check and she had immediately handed it back. Was this ceremony required in the instant case in order to satisfy the statute? We do not think it was.

On July 23rd, Mrs. Williams made a written offer to Roberts' agent to purchase Roberts' boat for the sum of $2,750, deposited a check for one hundred dollars, and authorized him to turn it over to Roberts as part payment if the offer should be accepted. After some negotiations in which the offer was momentarily withdrawn, but immediately renewed, it was accepted. The deposit was at no time withdrawn. The parties intended, when the deposit was made, that, upon an acceptance of the offer, the deposit should be retained by the seller as a part payment upon the oral contract. Here, there was something more than that a mere oral agreement that an antecedent debt arising out of some previous transaction should be regarded as part payment. A provable act was performed. A check was delivered to constitute a part payment on the proposed contract if and when the offer should be accepted, and the offer was accepted.

We do not share in the fears expressed by counsel for appellant that an approval of the holding made by the trial court will weaken the statute and tend to thwart its purpose. An offer was made in writing and a check was delivered to serve as part payment if and when the offer was accepted. Contracts which admittedly satisfy the statute are daily made with far less formality. If, for example, Mrs. Williams had met Mr. Roberts on the street and made an oral offer for his boat and he had orally accepted it, the requirements of the statute would have been fully satisfied if she had simply

then, or later, handed him a five dollar bill or an even lesser sum in part payment.

It was further alleged in the complaint:

"That, by virtue of defendant's order to said bank to stop payment on said check, plaintiff was required to make a trip from San Francisco, California to Seattle, Washington, in an attempt to collect the amount of said check at a cost to him of Ninety-eight and 55/100 ($98.55) Dollars."

Roberts so testified; and that sum, in addition to protest fees, was allowed him in the judgment entered. The brief filed on his behalf contains some encyclopedia quotations concerning general damages, which, taken literally, appear to support the allowance, but no cases are cited in support thereof. We think that item should be stricken from the judgment, and it is so ordered.

As so modified, the judgment appealed is affirmed.

BLAKE, C. J., MAIN, and SIMPSON, JJ., concur.

MILLARD, J. (dissenting in part)—Surely, citation of sustaining authority is unnecessary to the effect that damages sustained by one, as in this case, because of breach of contract by second party to the agreement, are recoverable by first party. The judgment should be affirmed *in toto*.