### WALKER et al. v. CAVINESS et al.
#### No. 6655.

Court of Civil Appeals of Texas. Texarkana.
Feb. 12, 1953.

Rehearing Denied March 5, 1953.

O. B. Fisher J. D. McLaughlin and H. B. Harrison, Paris, for appellants.

Moore & Moore, Paris, for appellees.

REUBEN A. HALL, Chief Justice.

Lloyd Caviness and others, appellees, instituted this suit against Denson Walker and Earnest R. Hunter, as partners, and Four States Live Stock Commission Company, a copartnership owned by them, and numerous other persons for the value of certain cattle stolen from appellees on or about November 27, 1948 (the evidence showing that the cattle were stolen on or about November 19, 1948). Appellees alleged that Raymond Glenn, Gene Wynn, George McNeil and Holbert Glasscock stole said cattle from them and sold same to

Louie Joe Preston and George Thomas Rosson and that Preston and Rosson employed Boyce Campbell, a trucker, to transport said stolen cattle to Texarkana, Texas, where they were delivered to the Four States Live Stock Commission Company, a co-partnership, and by the latter sold to certain parties and the proceeds of said sale turned over to the truckdriver, Boyce Campbell, and by him delivered to Preston and Rosson. Trial was to the jury which resulted in a verdict favorable to appellees and judgment for them was entered accordingly against appellants Denson Walker and Earnest R. Hunter, co-partners, doing business as Four States Live Stock Commission Company.

■ At the outset we are met with a motion by appellees to dismiss this appeal for the reason that an appeal from Lamar County 62nd District Court is not governed by Rule 330, T.R.C.P., the procedure followed by appellants, but by the general statute governing appeals to this court. R.S., Art. 199, Vernon's Ann.Civ.St., as it applies to the terms of court 62nd district, including Lamar County, provides "Each term of court in each of such counties [contained in the 62nd district] may continue until the date herein fixed for the beginning of the next succeeding term therein." A very similar provision to the above in R.S., Art. 199, has been held to constitute continuous terms of court to which Rule 330, T.R.C.P. applies. Bunte v. Flett, Tex.Sup., 243 S.W. 2d 828; National Life & Accident Insurance Co. v. Collins, Tex.Civ.App., 224 S.W.2d 285 (writ refused). This motion is overruled.

Appellants bring forward sixteen points, asserting many grounds of alleged error by the trial court. The first point complains of the action of the trial court in refusing to grant appellants' motion for instructed verdict at the close of the evidence by both appellants and appellees. This is the very heart of this cause of action. It is undisputed that the Four States Live Stock Commission Company was duly licensed as a marketing agency under the Packers and Stockyards Act of 1921, 7 U.S.C.A. §§ 181–231, at the time it handled the cattle in controversy. It is not disputed in this record that the cattle lost by appellees were stolen by Raymond Glenn, Gene Wynn, George McNeil and Holbert Glasscock, either separately or acting in concert, early in the morning of November 19, 1948; that one or more of parties named next above sold the cattle around two o'clock in the morning of November 19, 1948, to Preston and Rosson; that Preston and Rosson hired Boyce Campbell to transport the cattle, the same morning, to the appellant commission company in Texarkana, Texas, and on the same day said cattle were by said commission company sold to various persons. Two head of said cattle were recovered and were paid for by Rosson and Preston. So, the question here presented is whether the commission company, duly licensed as a marketing agency under the Packers and Stockyards Act of 1921, in the circumstances set out above, is liable to the true owners of said cattle for their value. Section 208 of said Stockyards Act of 1921 reads as follows: "It shall be the duty of every stockyard owner and market agency to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services, and every unjust, unreasonable, or discriminatory * * * practice is prohibited and declared to be unlawful." Section 205 of said Act provides: "It shall be the duty of every stockyard owner and market agency to furnish upon reasonable request, without discrimination, reasonable stockyard services at such stockyard". It is appellants' contention that under the terms of the Act it was required to handle all stock brought to it for sale without any discrimination whatsoever, and that said Act would protect appellants in the sale of said cattle under its authority as a public agency regulated by the above Act, regardless of the origin of said stock or whether they were stolen or not. Appellants claim that such is the meaning of section 205 of said Act as set out above. In this connection it may be stated that the parties stipulated in the trial court "that appellants had no reason or justification to question the right of the party delivering the cattle to deliver

them in the name of Rosson and Preston for whom he was hauling, and there were no circumstances whatsoever that would arouse the suspicion of appellants, or cause appellants to suspect any invalidity as to the title to the cattle being in Rosson and Preston as represented by the hauler, Boyce Campbell." The only control exercised over the cattle by appellants was in permitting Campbell to release the cattle in their stock pens and their taking charge of them and making the sale to various buyers.

■■ It is appellees' contention that the cattle having been stolen, title never passed out of the owners, and that neither the thieves nor anyone else holding through or under them could transfer the title to said cattle. We find no case from Texas courts, and we have been referred to none, where the issue presented here has been decided. The courts of other states have ruled both ways on the question. The common law rule is that a thief can never pass title to stolen goods, neither can any one to whom he has attempted to transfer title. All parties to this appeal admit the above rule to be correct and that the appellant here would be liable to appellees unless absolved by the regulations of the Department of Agriculture. We are cited by appellants to two cases, namely: Blackwell v. Laird, 236 Mo.App. 1217, 163 S.W.2d 91, Sullivan Co. v. Wells, d/b/a Wells Commission Co., D.C., 89 F.Supp. 317. Other cases are cited by appellants but they seem to rely mainly on these two. The Blackwell Case, supra, by the Court of Appeals of Missouri holds clearly that Laird who operated a live stock commission company at Kansas City was not liable to the true owner for the value of cattle sold by him through his commission company even though the cattle had been stolen from the owner by the parties who sold them through the commission company. The Sullivan Case by the Federal District Court of Nebraska, we think holds that the regulations under the Packers and Stockyards Act by the Agricultural Department relieved the commission company of liability for conversion of the cattle, even though the parties who delivered the cattle to the commission company had no authority to do so. The cases cited next above by appellants are said to represent the minority view with respect to the liability of commission men under the Stockyards Act.

Appellees, among other cases, rely on Birmingham v. Rice Brothers, 238 Iowa 410, 26 N.W.2d 39, 2 A.L.R.2d 1108; Mason City Production Credit Association v. Sig Ellingson & Co., 205 Minn. 537, 286 N.W. 713; Moderie v. Schmidt, 6 Wash.2d 592, 108 P.2d 331; Citizens State Bank v. Farmers Union Livestock Co-Op. Co., 165 Kan. 96, 193 P.2d 636; First National Bank v. Siman, 65 S.D. 514, 275 N.W. 347. While the above cases do not involve the question of stolen cattle they do rest on the wrongful sale of live stock by a mortgagor in violation of a registration law in said states. In each of the last above named cases the commission company was held as a matter of law to be liable to the true owner, the mortgagees, on the ground that the commission company had constructive notice of the mortgage, and further that the rules and regulations of the Secretary of Agriculture were not intended and did not overrule the laws of the states in which said appeals originated. We do not think that it was the intention and purpose of the rules and regulations of the Secretary of Agriculture promulgated under the Packers and Stockyards Act of 1921 to abrogate the common law rule recognized in this state for over a hundred years, that neither the thief nor anyone holding under him can transfer title to stolen goods or chattels. If we should follow the Laird Case, supra, from the Court of Appeals of Missouri we would be forced to hold just that. The case of Birmingham v. Rice Brothers Co., supra [238 Iowa 410, 26 N.W. 2d 42] is from the Supreme Court of Iowa, and is a well considered case from the viewpoint of both the appellants and appellees here, for the reason that the opinion was by a divided court, five writing the opinion of the court and four, including the Chief Justice, joined in the dissenting opinion. Both the opinion of the court and the dissenting opinion in that case discussed the rules promulgated by the Secretary of Agriculture, namely; "it [shall be] the duty

of every stockyard owner and market agency, 'to furnish upon reasonable request, without discrimination, reasonable stockyard services at such stockyards'." As said in the Birmingham Case, supra, "Certainly, Congress did not adopt the Packers and Stockyards Act to encourage and protect the operation of fences for handling property stolen or procured by fraud. The Act merely makes it the duty of such agencies to furnish upon *reasonable request without discrimination* reasonable stockyards services. It is not wrongful *discrimination* to refuse to aid a criminal in his crime, nor is a request that one dispose of property fraudulently procured or stolen a *reasonable request*. However, the proposition just considered is not the ultimate one before us. The precise question here is not what regulations the Act imposes upon market agencies but what legal rights, if any, it takes away from the general public. Even though the Act did burden the operations of market agencies to the extent asserted by appellee, it would not necessarily follow that Congress intended, in exchange therefor, to relieve such agencies from liability in tort for wrongful conversion and thus abrogate legal rights subsisting in the general public under state laws. Every decision of a court of last resort, brought to our attention, which has determined the question, holds the Packers and Stockyards Act does not absolve the factor from liability for conversion in cases of this nature." Quoting further from the above case: "The conduct prohibited is always *unjust* discrimination, *unfair* rates or practices or *unreasonable* rules." See also U. S. v. American Livestock Commission Co., 279 U.S. 435, 49 S.Ct. 425, 73 L.Ed. 787; Farmers Livestock Commission Co. v. U.S., D.C., 54 F.2d 375. In Mason City Production Credit Association v. Sig Ellingson, supra [205 Minn. 537, 286 N.W. 715], it is said: "The Packers and Stockyards Act was passed to remedy abuses that had grown up in the large stockyards located in various places of the nation, whereby, among other wrongs, raisers, feeders and shippers of livestock were charged unequal and excessive rates for services rendered in handling

and selling the stock after reaching the yards." See also Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735. In the case of Moderie v. Schmidt, supra, [6 Wash.2d 592, 108 P.2d 334], from the Supreme Court of Washington, the holding with respect to conversion by a commission agency is the same as in the Birmingham Case and the Sig Ellingson Case, supra, and in that case it is stated further: "The Supreme Court of the United States denied a petition for a writ of certiorari (308 U.S. 599, 60 S.Ct. 130, 84 L.Ed. 501, [in Sig Ellingson Case, supra]), and later, a motion for a rehearing of the petition (308 U.S. 637, 60 S.Ct. 178, 84 L.Ed. 529). *We note that the solicitor general of the United States appeared in the Supreme Court and opposed the granting of the writ. It seems reasonable to infer that the decision of the Minnesota Supreme Court was satisfactory to the federal authorities charged with the administration of the Packers and Stockyards Act."* Appellees also rely upon the case of De Vries v. Sig Ellingson, D.C., 100 F.Supp. 78. The holding in that case is very similar to the cases discussed last above and the other cases relied upon by appellees. This last case was affirmed by the Circuit Court of Appeals, 8 Cir., 199 F.2d 677. The rule with respect to liability of commission companies is very clearly set forth in 22 Am.Jur., p. 333, § 48: "As a general rule, a factor or commission merchant who receives property from his principal, sells it under the latter's instructions, and pays him the proceeds of the sale is guilty of a conversion if his principal had no title thereto or right to sell the property; and the factor may not escape liability to the true owner for the value of the property by claiming that he acted in good faith and in ignorance of his principal's want of title." See also 11 R.C. L., p. 780, § 34; 35 C.J.S., Factors, § 57 b, p. 465. The above rule, of course, would not apply where the true owner of the cattle misled the commission company in believing that its principal (seller) had authority to sell the cattle. But there is no semblance of testimony in this record that appellees knew of the sale of their cattle until sometime after they had been sold by

appellants. Appellees were in no wise negligent with respect to the loss of their cattle. They were stolen and some of the thieves admitted the theft and testified by deposition from Texas State Penitentiary where they were confined for stealing appellees' cattle. We have concluded that the majority rule set out in the authorities cited last above is the correct one and is controlling here. This point is overruled.

By several points appellants complain of the action of the trial court in refusing to submit to the jury several special issues requested by them submitting a definition of conversion, that is, whether they (appellants) unlawfully and wrongfully exercised dominion over the cattle to the exclusion of the owners. As above stated the facts with respect to the theft of the cattle, their sale to Preston and Rosson, the delivery of the cattle by Campbell to appellants, the Commission Company in Texarkana, Texas, and the sale of said cattle by the appellants are in no wise disputed, and for that reason the trial court did not commit error in failing to submit to the jury the requested special issues. The undisputed evidence in this case shows conclusively that appellants were as a matter of law guilty of conversion in their handling of appellees' cattle. In Hunter v. Abernathy, 188 S.W. 269, it is said: "Any person is guilty of wrongful conversion of property who aids and assists the mortgagor in so disposing of the proceeds thereof as to defeat the mortgagee's interest therein; and we do not think he is exempt from the operation of this rule by reason of the fact that he was a factor or commission merchant." See cases cited. For a stronger reason, here, appellants would be guilty of conversion of the cattle by their act of selling same to the general public and remitting the proceeds to Preston and Rosson, the original buyers of the stolen cattle, thus aiding their principals in placing the stolen cattle beyond the reach of appellees, the true owners. These points are overruled.

Appellants assert in other points that this judgment should be reversed for the reason that the court erred in permitting appellees' counsel to ask certain leading questions in identifying the stolen cattle. Some of the questions propounded to appellees' witnesses were suggestive and leading with respect to the brands on the cattle stolen. But, we think taking the record as a whole we would not be warranted in reversing the judgment in this case for such error. It is our opinion that the error complained of did not amount to such a denial of the rights of the appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, nor was it of such nature as probably prevented appellants from making a proper presentation of the case to this court. Rules of T.R.C.P., 434, par. 2, and 503, par. 2.

We have examined all other points advanced by appellants and in our opinion they are without merit and are overruled.

The judgment of the trial court is affirmed.