Guy A. THOMPSON, Trustee, Appellant,

v.

Arthur H. KEENE, Jr., Appellee.

No. 12833.

Court of Civil Appeals of Texas.

San Antonio.

May 11, 1955.

Rehearing Denied June 15, 1955.

Eskridge, Groce & Hebdon, San Antonio, for appellant.

Elmer Ware Stahl, A. R. Sohn, Robert B. O'Connor, San Antonio, for appellee.

POPE, Justice.

Plaintiff, Arthur H. Keene, Jr., recovered judgment against the defendant railroad for the loss of his left leg during switching operations in its San Fernando switch yards in San Antonio. The suit was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Defendant railroad attacks the judgment because a jury finding that defendant's long field man failed to keep a lookout for the plaintiff was not supported by the evidence. Defendant, by general points, collectively attacks all findings of proximate cause as being without evidence. See Rules 321, 322, Texas Rules of Civil Procedure. Defendant urges that it was prejudiced when the trial court permitted plaintiff to introduce portions of two depositions under the adverse party rule, and in refusing to permit the defendant to cross-examine one of the witnesses in person. Defendant briefs generally the proposition that plaintiff was contributorily negligent in several particulars, but that portion of the brief has no support, either by points in the brief or assignments in the motion for new trial, and will be disregarded. We shall discuss the first two points together.

At the time of the accident plaintiff was acting as a car inspector for the defendant. A switch crew had commenced to make up a "hot shot" through freight train. The engine had been delayed about fifty minutes and the crew was working faster than usual. In making up the train, two cars were placed on Track Three in the yard and their brakes were set to serve as an anchor so other cars could be kicked into and be coupled on them. Ordinarily, from eight to thirteen was the maximum number of cars handled in a single switching operation. Immediately before the accident, in obedience to the signal of the foreman who was in charge of the opera-

tions, the engine proceeded in a southerly direction, away from the cars that were set on Track Three. When that line of cars had gone far enough south, the foreman gave a signal to open the switch leading back to Track Three, so the engine could then push the line of cars onto Track Three and couple the cars with those already there. Fifteen or sixteen cars were being handled, which was more than the usual number. Because of a curve in the tracks, when more than twelve or thirteen cars were handled, the crew would be so spread that at times it was difficult or impossible to see those upon whom the crew must depend for hand signals. In this situation, the engineer was on the east side of his engine, headed back north. The normal procedure was for all other crew members to work also on the east side, in order to communicate by signals with the engineer and each other. The position of the next crew member, the pin puller, was to the north of but nearest the engine. Still farther north was the foreman who was the boss of the entire operation. Beyond him was the short field man, and at the north end of the line of cars was the long field man. Positioned in this order, because of the long line of cars and the curve in the track, the crew members at times could not see each other unless they walked to the east away from the track.

Plaintiff's job as an inspector included the task of coupling air hoses, which is done during switching operations and which requires him to step between the cars. While the engine was in the described position, preparatory to commencing its move back to the north, to couple with the cars on Track Three, plaintiff looked south to see if any switch operations were then going on and to locate one of the crew. He saw the long field man and properly gave him an "air hose signal." That signal, under proper procedure, would be relayed on to the men stationed along the east side of the train until it reached the engineer, who would withhold switching operations. Under proper procedure, the long field man would return the signal at which time plaintiff could safely go between the cars to make the air hose connection. If it was not safe, the long field man should have given a "stop" signal. The plaintiff testified that he received the return signal from the long field man, who was the crew member closest to him. The record shows that the engineer was beyond the curve, out of sight of the crew, and that he actually received no signal. The record shows further that it was the duty of the long field man to have walked to a point where he could be seen giving his "air hose" signal to the men beyond him. The foreman was so far south and around the curve that he could not see the long field man. The relay of the signal was impossible unless the long field man gave his signal so it could be seen. That was his duty.

When the long field man signaled plaintiff that he could go between the cars, plaintiff did so, and while there the string of cars was kicked into the cars already on Track Three, knocking him down and amputating his leg. The evidence, though disputed, showed that it was correct procedure to go between the cars for an air hose connection without placing a blue flag, and also that the train was moving at a speed in excess of the usual speed. There is other evidence, but this is enough to show that the lookout issue has support in the evidence. The long field man had a duty to keep a lookout for and on behalf of the plaintiff, which the evidence shows he did not do.

If, however, the evidence had not supported the finding of the jury that the long field man failed to keep a lookout for plaintiff we would not disturb the judgment, for there were other sufficient jury findings of the defendant's neligence which proximately caused the accident, and the jury found that there was no contributory negligence. Texas & N. O. R. Co. v. Mc-Ginnis, Tex.Com.App., 130 Tex. 338, 109 S.W.2d 160. The jury also found that defendant railroad was negligent because its employee failed to convey a signal to another member of the switch crew, its

employee caused a cut of cars to be switched at a greater rate of speed than would an ordinary prudent person, its employee caused a cut of cars to be switched at a coupling speed in excess of four miles per hour, and its employees during the switching operations were so distantly removed from each other that they could not receive signals from another employee. The jury found each of those acts of negligence was a proximate cause. There was substantial evidence to support each of the findings and it serves no useful purpose to search out bits of evidence which may support defendant's theories. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609; 17 Tex.Jur., Evidence, § 410.

■ Plaintiff and defendant, in the presentation of the case, offered in evidence portions of the deposition testimony of the same two employees of the defendant railroad. Plaintiff offered the evidence under the adverse party rule. Rule 182, Tex. R.C.P.' Defendant objected to the introduction solely on the grounds that the rule did not apply to an employee of the defendant. That objection was not good. Texas & P. Ry. Co. v. Mix, Tex.Civ.App., 193 S.W.2d 542, 549. No other objection to the offer was made. Defendant now urges that the adverse party rule does not apply to employees of an individual, that Guy Thompson, Trustee for the railroad, is an individual, and contends that one of the attorneys for the plaintiff is a fellow member of the Brotherhood of Railroad Trainmen. Defendant also urges that it was denied the right to cross-examine one of the witnesses at the trial.

■ Defendant's first argument that the trustee is an individual and should not be regarded as within the provisions of Rule 182, is without merit. The real party in interest is the corporation, and it is still in being, though its functions are performed through the trustee. See State v. Dyer, 145 Tex. 586, 200 S.W.2d 813, 816; 45 Am.Jur., Receivers, § 136. The fact that one of plaintiff's attorneys and a witness are members of the same Railroad Brotherhood is no more conclusive that a witness is hostile or friendly than membership in the same Bar Association means that all attorneys are on the same side of a case. However, we have examined all the evidence offered by the two witnesses, and the record indicates neither an effort to impeach nor the use of leading questions by the plaintiff. Defendant has shown no harm.

Defendant complains that he was denied the right to cross-examine the witness Helmke. Helmke was the long field man who, according to the jury, was negligent. Both plaintiff and defendant introduced portions of the deposition testimony of Helmke. See Parr v. Parr, Tex.Civ.App., 207 S.W.2d 187, 192. He was defendant's employee and there were no leading questions by plaintiff in developing his testimony. After the plaintiff rested, counsel for defendant stated that he then tendered the witness Helmke and asked permission to cross-examine him. There was colloquy between court and all counsel. At one point the court stated to the defendant's counsel: "* * * bring him in then and cross-examine him." At another point the court said: "I told you that if he testified to something inconsistent with a statement that he has already given you could claim surprise and impeach him on it." Still another time the court stated to defendant's counsel: "Don't run away yet now. I am just wondering, if you want to call this man as a witness you have a right to." And at still another time, the court said: "But I will say now that since you tendered the witness, I don't want the record to even indicate in the slightest degree that I refused you the privilege of placing him on the witness stand."

■ Defendant has no error upon which he can rely. Witnesses are not offered in absentia. At the time of the tender the witness was not in the court room but was on his job with the railroad company and was available. Witnesses are examined in the court room where the jury is seated, and this witness was in the freight yard, so far as this record shows, ignorant that his

presence was needed or wanted. Hence, we have a hypothetical situation presented to the court. "If such a practice were allowed it would be quite possible for a party without having any witnesses at all to the point, to raise any controverted or difficult question as to the admissibility of evidence, which the cause on trial admitted of, and obtain a reversal of the judgment against him, if the court below should, in the opinion of this Court have ruled erroneously on such a question." Eschbach v. Hurtt, 47 Md. 61; 88 C.J.S., Trial, § 81; 64 C.J., Trial § 149, n. 99. Even so, the defendant has not brought forward any bill of exception which would show the nature of the testimony the absent witness would have given. Texas Associates, Inc., v. Joe Bland Const. Co., Tex.Civ.App., 222 S.W.2d 413, 421; Walker v. Caviness, Tex. Civ.App., 256 S.W.2d 880, 884.

The judgment is affirmed.