Homer WILSON, Appellant,

v.

John G. STEVENS et al., Appellees.

No. 14801.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 1, 1969.

Rehearing Denied Oct. 29, 1969.

Joe Meador, San Antonio, Irving Bates, Houston, for appellant.

Thomas J. Lee, C. G. House, House, Mercer, House & Brock, San Antonio, for appellees.

BARROW, Chief Justice.

Appellee John G. Stevens brought this suit to recover actual and exemplary damages from appellant, Homer Wilson, because the 1966 Impala Chevrolet automobile Stevens purchased from Wilson did not have a good and sufficient title, in that it was a stolen automobile. Wilson filed a third-party action, whereby he sought indemnity from appellee Motors Insurance Corporation a/k/a Motors Insurance Company. After a jury trial, the court granted an instructed verdict to Motors Insurance Company and entered a judgment for Stevens against Wilson for stipulated actual damages of $3,331.25.

Appellant urges that the judgment for Stevens should be reversed and rendered or, in the alternative, remanded, because there is no evidence, or insufficient evidence, that the automobile in question was a stolen automobile. Wilson also asserts two points pertaining to the charge of the court. An appeal was perfected also as to the take-nothing judgment entered on Wilson's action against Motors Insurance Company.

Homer Wilson operated a used car lot in San Antonio. On or about July 1, 1966, John G. Stevens purchased a 1966 Impala Chevrolet from Wilson. The certificate of title to vehicle identification No. 164376R–119041 was assigned from Wilson to Stevens, who subsequently secured title in his name from the Texas Highway Department. This identification number was on a 1966 Impala Chevrolet originally registered to John Null.

On April 23, 1966, John Null was involved in an accident which took his life and demolished said car. Motors Insurance Company carried collision insurance on the Null car. A settlement of the collision loss was made by Motors Insurance Company with Mrs. J. H. Null, mother and heir of John Null, whereby Mrs. Null was paid for the value of the car. She signed a power of attorney authorizing an employee of Motors Insurance Company to transfer title to the wrecked car. Motors Insurance Company then accepted a salvage bid of $231.00 from Dal-Tex Auto Parts, Inc., of Houston, for said car and the title on the Null car was transferred to the latter. Such title was subsequently transferred by Dal-Tex to South Congress Motors of Austin.

Wilson purchased three cars from Mr. Hinton of South Congress Motors, including the Impala subsequently sold to Stevens. It turned out that all three were stolen cars. An automobile theft ring of which Hinton was a member secured title to wrecked automobiles and then would steal a similar type car. The door post identification number of the stolen car was changed to match the identification number on the title of the wrecked car. Thus, when the father of appellee Stevens checked the door number of the Impala in question, before the latter purchased the car, it matched the number on the certificate of title held by Wilson.

In December, 1966, Wilson was contacted by the Texas Highway Department and advised that the Impala he had sold Stevens was suspected of being stolen. Later, two city detectives came by his lot and he accompanied them to the home of Stevens. The car was delivered to the policemen by Mrs. Stevens at the request of Wilson. Wilson was subsequently contacted by Trinity Universal Insurance Company and advised that he could purchase the car for $1900, however, he did not do so.

The record is clear that there was no doubt in the minds of Stevens and Wilson subsequent to this occurrence that the car sold Stevens was a stolen vehicle. For several months after the car was taken from Stevens, Wilson furnished another vehicle for Stevens to drive pending settlement of the controversy. However, the matter was never settled and Stevens brought this suit. Undoubtedly because of the prior negotiations between the parties, Stevens made little effort during the trial to identify the stolen vehicle. The policemen were not called as witnesses, nor was

anyone from Trinity Universal Insurance Company. Appellant urges on this appeal that Stevens' case fails for lack of evidence to show that the title on the Impala sold Stevens was not good and sufficient or that it was a stolen vehicle.

■ The uncontroverted testimony of Mrs. Stevens is that Wilson vouched that the two men were detectives and Wilson asked her to turn the car over to them so that the confidential identification number on the car could be checked. Wilson later telephoned and confirmed to her that the car was a stolen car. She testified that Wilson advised her that the car was definitely stolen. This testimony is sufficient to support a fact issue that the vehicle sold to Stevens did not have a good and sufficient title. Jamison v. Sockwell, 405 S.W. 2d 618 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.); Beauchamp v. Nichols, 278 S.W.2d 533 (Tex.Civ.App.—Amarillo 1954, no writ); Walker v. Caviness, 256 S. W.2d 880 (Tex.Civ.App.—Texarkana 1953, no writ).

■ Appellant complains of the inclusion in the court's charge of a definition of the word "fraud." No complaint is made of the definition given, but appellant urges that such definition was improperly included, in that such word was not inquired about in the charge. Such definition was erroneously included, in that since "fraud" was not used in the charge, the definition was not necessary to assist the jury in answering any issue. Security State Bank & Trust v. Craighead, 440 S. W.2d 701 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.); Levermann v. Cartall, 393 S.W.2d 931 (Tex.Civ.App.— San Antonio 1965, writ ref'd n. r. e); Rule 277, Texas Rules of Civil Procedure.

We conclude, however, from an examination of this record that such error did not amount to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment so as to require a reversal of this judgment. Rule 434, T.R.C.P. Here the record is virtually undisputed on all issues. As pointed out heretofore, the record is uncontroverted that the car in controversy was a stolen car. Actual damages were stipulated and no issue of exemplary damages was submitted. There was no evidence that Wilson had any part in the theft-ring, or that he had any knowledge that the automobile was stolen at the time he sold it to Stevens. In this situation the error in including a definition of "fraud" in the charge was harmless.

■ Appellant complains also of the judgment for Stevens because of the failure of the court to submit an issue inqiring if the misrepresentation by Wilson as to the title of the car in controversy was a proximate cause of Stevens' damage. Such an issue was unnecessary. The record is uncontroverted that the car was turned over to the detectives at the request of Wilson and was never returned to Stevens after the detectives confirmed that the car was stolen. Furthermore, the general rule of restitution is that where one sells stolen property, he cannot pass good title and the purchaser has a right to recover the purchase price. Davis v. Gonzales, 235 S.W. 2d 221 (Tex.Civ.App.—Fort Worth 1950, writ dism'd).

■ Appellant sought indemnity from Motors Insurance Company upon the theory that it violated Art. 1436–1, § 37(a) of the Penal Code of Texas.[1] He urges now that the trial court erred in granting an instructed verdict to said party at the close of all evidence. Although title was never actually in the name of Motors Insurance Company, the record would support an in-

---

1. This section provides in part: "When any motor vehicle registered or licensed in Texas to which a certificate of title has been issued is junked, dismantled, de-

stroyed, * * * the owner named last in the certificate of title shall surrender the certificate of title to the Department * * *."

ference that it had full control over the Null car after it paid Mrs. Null the value of the car and its employee was given authority to transfer the title to same. Appellant urges that Sec. 37(a) required Motors Insurance Company to surrender the title to the Texas Highway Department before selling the wrecked car to Dal-Tex Auto Parts. It is seen that Motors Insurance Company did not "junk, dismantle or destroy" said vehicle. Furthermore, under the uncontroverted evidence, buyers of wrecked cars are required to keep and maintain the certificates of title to such automobiles until such a car is dismantled. See Art. 1436–2, Penal Code. The trial court did not err in granting Motors Insurance Company an instructed verdict.

The judgment is affirmed.